## MARY BROWNFIELD

*v.*

## MARY ANN WILSON *et al.*

1. WILLS—*rules of construction.* In the construction of wills or other instruments, in cases of doubt all the parts should be considered together, and, if possible, effect should be given to every clause and provision according to the intention of the maker.

2. Technical rules are not so rigidly applied in the construction of wills, which are frequently written by persons unskilled and imperfectly acquainted with the accurate meaning of language, as in the construction of deeds; but the question, however, is, the entire instrument being considered, what did the testator intend by the will.

3. A latter clause of a will is to be considered, when repugnant to a former provision, as intending to modify or abrogate the former.

4. Whilst courts, in cases of doubt, may resort to surrounding circumstances to afford light in which to read the will and ascertain the intention of the testator, still they should never control—they are intended as mere aids.

5. SAME—*declaration of testator.* In construing wills, courts can not resort to the declarations of the testator, either before or after the execution of the will, to control its provisions.

6. SAME—*whether in fee, or only a life estate.* By one clause of his will a testator gave to his wife a certain tract of land, and by a subsequent clause he gave to his children, to share equally and alike in his real estate—the real estate to be sold after his wife's death: *Held*, that the wife took a fee simple estate, and not merely an estate for life.

APPEAL from the Circuit Court of Knox county; the Hon. ARTHUR A. SMITH, Judge, presiding.

Messrs. WILLIAMS, McKENZIE & CALKINS, for the appellant.

Messrs. HUMPHREY & SNOW, for the appellees.

Mr. JUSTICE WALKER delivered the opinion of the Court:

In the month of August, 1871, Christian Brownfield made and published his last will and testament, which contains two clauses, out of which this controversy has grown. They are these:

*First.* "I give and bequeath to my beloved wife, Mary Brownfield, forty acres, viz: the north forty where the house and orchard now stands on."

*Second.* "I give and bequeath to my heirs, John Brownfield, and Mary Ann Brownfield, and Margaret R. Brownfield, Catharine Jane Brownfield, Nancy Elizabeth Brownfield, Sarah Louise Brownfield, Susannah Armstrong, to share equally and alike in my real estate, and also my personal property; the personal property to be sold after my death, and the real estate after Mary Brownfield's death."

The heirs, being dissatisfied with the will, and Mrs. Brownfield being a step-mother, filed a bill to set it aside, on the grounds that it had been obtained by undue influence, and that the testator, at the time of its execution, was not of sound mind and memory. But subsequently these grounds were abandoned, and the bill was amended, asking the court to construe the will, and to decree that the widow took by the will but a life estate in the real estate named in the first clause. A trial was had on the bill, answer, replication, exhibits and the proofs, when the court found and decreed that the widow took, under the first clause of the will, but a life estate. And from that decree Mrs. Brownfield appeals to this court.

The question has not been raised as to the power of the court to entertain a bill simply to give a construction to a will, and we will therefore not examine or discuss that question, but we will proceed to determine whether the court erred in rendering the decree. This is the only question pressed in argument, and we shall confine ourselves alone to its consideration.

Both parties are agreed, that, if the first clause were considered alone, it devises to Mrs. Brownfield the forty acres upon which the house and orchard are situated in fee simple absolute; but appellees contend, that, when considered with the second clause, it is manifest that it limits the devise by the first to a life estate in the devisee—that this is the true construction of these two clauses. On the other hand, appellant claims and insists that the second clause is entirely separate from and has no reference to the first, and consequently has no control over it, or the title or estate devised therein. This is the precise question presented by this record for solution.

It is one of the familiar rules of construction, whether of a will or other instrument, that in cases of doubt all of its parts should be considered together, and, if possible, to give every clause and provision effect, according to the intention of the

maker.  When ascertained, the intention of the testator must be enforced.  And, inasmuch as wills are frequently draughted by persons unskilled, and who are imperfectly acquainted. with the accurate meaning of language, and are wholly unacquainted with the technical meaning of words, and have no knowledge of the theory of tenures, as they .obtain in our system of jurisprudence, technical rules are not so rigidly applied as in the construction of deeds.  The question, however, is, the entire instrument considered, what did the testator intend by the will?  Then, when this will is considered, what, if any, effect, had the second clause upon the first?

A latter clause of a will is to be considered, when repugnant to a former provision, as intending to modify or abrogate the former.  Now, when the testator had given to his wife the home forty acre tract in fee, can we suppose in the very next sentence he gave, or intended to give, the same without limitation, except that it, with his other real estate, should, at the time named, be sold, and the proceeds divided among his heirs.  Such a supposition can not be indulged, unless the language employed will bear no other construction.  And yet, if the phrase, "to share equally and alike in my real estate," was intended to embrace all of his lands and tenements, it would revoke the devise in the first clause, because he gives and bequeaths to the persons named, real estate, to be shared alike and equally between them.  Now, if this phrase embraces, or by fair intendment could be held to embrace, all of his real estate for any purpose, it must be held to do so for all purposes; and if for all purposes, then the devise to the heirs was absolute, and the first clause was abrogated. If such had been his intention, just having made the previous devise, he unquestionably would have said so in language that could not have been mistaken.  Had he changed his mind after the first clause was written, in so important a matter, he would have said so, in the second or some other clause of the will.  We are, therefore, of opinion that the testator

intended to secure to his wife some interest in the home tract—either a life estate or a fee.

Having given to his wife a fee, by the first clause in the will, he having used no express language for the purpose, we are fully warranted in the inference that he had no design to limit or modify that devise. If, as we have seen, the devise in the second clause did not revoke the devise in the first, how can it be held to change the devise of a fee and limit it to a life estate ? The language employed either implies an entire revocation and a new devise of the property named in the first clause, or it leaves it unaffected. If testator did not intend to abrogate the first devise, how can we say that he intended to limit or modify it ? He used no language that can possibly be construed to have the latter and not the former effect. Had he intended the land in the first clause to have been sold, we regard it as almost morally certain that he would have required it, in plain language, to have been done after the death of the devisee, thus limiting the first devise to a life estate. We are clearly of opinion that the second clause must be read as devising to the persons named the remainder of his real estate, after excluding the forty acres named in the first clause. This seems to us as the only reasonable interpretation that can be given to this clause, when considered in connection with the first.

But, it is urged that the fact that the second clause requires the real estate to be sold on the death of his wife, manifests an intention to embrace all of his real estate in the sale and division. Now, the real estate referred to and required to be sold is, unquestionably, the same that was devised by that clause. It could have referred to no other. If the requirement of the sale embraced the land devised in the first clause, then the devise in the second clause embraced the land in the first, and the first was revoked, and we have seen that there was no revocation. Hence the requirement of a sale, the devise therein only related to the remainder of his real estate not embraced in the first clause.

472          BROWNFIELD *v.* WILSON *et al.*          [Sept. T.

Opinion of the Court.

But it is asked, why hold the property without sale until after the death of his wife, unless the portion devised to her was intended to be sold with the other, and the proceeds divided in the same manner? It may be asked, why he reserved the remainder, in which he gave her no interest whatever, either present or contingent, from sale until her death. Had he given her a life estate in the residue of his real estate, then the purpose of reserving it from sale until that time would have been obvious. If the reasoning by which testators arrive at conclusions which govern them in the disposition of their property was required to be ascertained before a will could be sustained, but few would stand the test, unless the testator should, in his will, explain the reason inducing him to make each provision. In this case, he may have supposed that the land would appreciate in value, or he may have had ample reasons for such a course from prudential and family considerations. As he gave Mrs. Brownfield no interest in the portion devised to the heirs, and he reserved it from sale, we can not see that it has any, the least, controlling effect on the devise to the widow.

Whilst courts, in cases of doubt, may resort to surrounding circumstances to afford light in which to read the will and ascertain the intention of the testator, still they should never control. They are intended as mere aids. Nor can the courts resort to declarations of the testator, before or after the execution of the will, to control its provisions. If such declarations should be allowed to give an interpretation, then, in this case, there would be no difficulty, as the testator said, afterwards, that he had given the home forty to his wife, and the rest of his real estate was to be divided between his children and the blind girl.

It is urged that, in cases of doubt, like the present, we should look and see who are the natural objects of his bounty, as explaining the intention of the testator. If we were to do so in this case, we do not see that the result could be changed. For aught that appears, Mrs. Brownfield and her children

may have contributed as much or more to the acquisition of this property as he and his children. He said to his spiritual adviser that she had been to him a good wife, and to such, we apprehend, there can be no greater object of consideration and bounty. Children may be selfish, neglectful and inconsiderate of the comforts and wants of parents, but the devoted wife is self-sacrificing, unselfish, and ministers to the wants of the husband till the last. In such cases, no reason is perceived why a husband may not justly remember and reward such devotion, even beyond negligent or disrespectful children. Nor should the mere fact that they are of his blood, control or have any high consideration on a question of this character.

The law has fully invested all persons of sound mind and memory with power to dispose of their property by will, nor does it, in the slightest degree, undertake to say who shall be the objects of his bounty. In that, he is left free to act as he may choose. He may dispose of his property as he likes, and to whom he prefers, even to the disinheritance of his children. He is to be left to determine whether others, even strangers, are not more worthy objects of his bounty than his children. The evidence seems to show that his mind was clear, and that he fully comprehended the nature, scope and effect of the will he made, and no reason appears for refusing to carry it into effect.

The decree of the court below must be reversed, as a mistaken construction has been given to the will, and the bill will be dismissed.

*Decree reversed.*