The Modern Woodmen of America v. O'Connor, 182 Ill. App. 562.

### The Modern Woodmen of America et al., Appellants, v. Mary O'Connor, Appellee.

### Gen. No. 5,816.

1. WITNESSES, § 123*—*when beneficiary of insurance is competent.* A beneficiary named in a fraternal benefit certificate is a competent witness in an action for benefits.

2. INSURANCE, § 809*—*what persons may be beneficiaries.* A person who is partially dependent on an insured even though not related to him may be a beneficiary.

3. INSURANCE, § 809*—*what persons are "dependent."* The word "dependent," as used with reference to fraternal benefit associations, is in some sense at least used as similar to the dependence which usually obtains in the family relation, and the question of dependency of a beneficiary is one of fact.

4. INSURANCE, § 814*—*when stepmother is proper beneficiary.* Evidence *held* to establish the "dependence" of a stepmother on a member of a fraternal benefit society, wherefore she was entitled to the insurance.

*See Illinois Notes Digest, Vols. XI to XIV, same topic and section number.

Appeal from the Circuit Court of La Salle county; the Hon.
EDGAR ELDREDGE, Judge, presiding. Heard in this court at the April
term, 1913. Affirmed. Opinion filed August 2, 1913.

R. D. MILLS and E. C. SWIFT, for appellants.

JAMES J. CONWAY, for appellee.

MR. PRESIDING JUSTICE WHITNEY delivered the opinion of the court.

Daniel J. O'Connor made his application on February 10, 1902, to The Modern Woodmen for a benefit certificate in the sum of two thousand dollars and named in the application as his beneficiary Mary O'Connor, appellee, his stepmother and dependent. The benefit certificate was issued to him on February 26, 1902, according to the application. The statute under which the Modern Woodmen of America was organized recognizes a dependent as one class of persons to whom the payment of benefits were permitted at the date of the application and such class has continued one of the classes recognized by the statute at all times since the date of said application. The by-laws of the Modern Woodmen at all times have recognized dependents as a class to whom benefits could be paid.

Daniel J. O'Connor died September 29, 1909, and due proofs of his death were made. Mary O'Connor, the beneficiary named in said certificate, and Thomas O'Connor (a son of Daniel J. O'Connor, born after the benefit certificate was issued), through his guardian, each claimed the fund. The Modern Woodmen of America under the circumstances filed its bill of interpleader making Mary O'Connor and the child, Thomas O'Connor, defendants, and praying in the usual form that they each be required to show their respective claims to the fund. A trial was had before the court and a decree was entered finding that Mary O'Connor was entitled to the fund and directing its

payment to her. An appeal was taken by said guardian of said minor son to this court, and it is assigned as error of the trial court, (1) permitting an incompetent witness to testify for Mary O'Connor; (2) admitting incompetent evidence on behalf of Mary O'Connor; other errors all of which raise questions of fact only.

This court held in *Farrenkoph v. Holm*, 142 Ill. App. 336, that the beneficiary named in a similar benefit certificate was a competent witness; that the fund was never a part of the decedent's estate and would not pass by descent; and that any claim of those who would otherwise stand in the relationship of heirs at law would arise by contract under the laws of the order which placed them in the list of those who would take if the beneficiary in the certificate should fail.

We think Mary O'Connor was a competent witness. It is next urged there was error in permitting witnesses for Mary O'Connor to testify to statements made by decedent in his lifetime. Both sides to this controversy agree that in trials before the court if there is competent evidence enough in the record to sustain a decree then the admission of incompetent evidence would not reverse. The cases cited by appellant in his brief (*Hogan v. Wallace*, 63 Ill. App. 385; *Brownfield v. Wilson*, 78 Ill. 467; *Towne v. Towne*, 191 Ill. 478; *Hogan v. Wallace*, 166 Ill. 328) do not seem to be in point to sustain the position taken by counsel on this question.

We have left out of consideration, however, every statement testified to as having been made by decedent that was objected to, and have considered only evidence that shows facts as to whether or not Mary O'Connor in fact was a dependent. It will be borne in mind that the witness Daniel Halloran testified, without any objection being made, that he roomed with decedent while he was working at Moline; that pretty near twice a month every month he was there he saw decedent inclose a ten dollar bill to his stepmother and heard him say that he (decedent) had promised

his father on his deathbed that he would take care of his mother and provide for his little brothers and sisters, and that he belonged to the Modern Woodmen of America; that he had a policy in that order, and that a short time after he was married his mother had sent him the policy and wanted to give it to him and his wife, and that he sent it right back and told his mother that after awhile he would get some other insurance for the benefit of his wife. Halloran testified to the fact of decedent sending money to Mary O'Connor as well as to what he heard decedent say about his support of his stepmother and the taking out of insurance for her, and if the latter be disregarded, still the testimony of the fact remains. Mary O'Connor, whom we regard as a competent witness under the authority above cited testified that she was married to Daniel J. O'Connor's father in 1891; then went to Chicago to live with him; that when they went to Chicago the family consisted of herself and husband and two stepchildren of whom Daniel J. O'Connor was one; that while in Chicago two children were born to her; that she resided in Chicago about four and one-half years and then her husband went to Minneapolis to work and she went to her father's near Chatsworth, where she remained from July until the latter part of October; that Daniel J. O'Connor was with her; that they then removed to Ottawa where three more children were born to her of the marriage; that her husband left a policy of two thousand dollars in the Modern Woodmen at his death and no other property; that with the proceeds of the policy she bought a home, putting into it about one thousand two hundred dollars; that she expended about four hundred of the money in the payment of debts and that there was none of it left at the time of Daniel J. O'Connor's marriage; that Daniel J. O'Connor worked previous to his marriage and always gave his wages to her; that he continued to live with her at her home after the death of his father up to a time shortly before his

marriage when he went from her home to Mrs. Harrington's on account of diphtheria, where he remained a short time and then got married; that no one contributed to her support up to that time except Daniel J. O'Connor and what little she could make herself at washing; that after Daniel J. O'Connor married he contributed two dollars a week to her support; that he used to come to the house and give it to her; that subsequently his wife got a divorce from him and after the divorce he contributed ten dollars every two weeks to her support until about the time of his death; that he was buried from her house; that she paid the assessments on the benefit certificate; that she became indebted for certain funeral expenses for decedent and has not been able to pay them.

Thomas O'Connor, a son of Mary O'Connor, testified that right after Daniel J. O'Connor got married he, Thomas, started to work at three dollars a week and worked about nine months out of the year; that he then worked in the glass house part of the time for three dollars a week; then earned seventy-five cents a day; then one dollar a day (covering a period of about four years by his testimony), and that he is now working for the ''Q'' railroad earning seventy dollars a month; that he knows Daniel J. O'Connor contributed to his mother's support before he was married and used to bring his mother his money; that he knows of his sending her two dollars a week after his marriage; that he saw him pay her and that he himself brought home money to her on two occasions; that he had seen his mother get letters with money in and take money out and go and pay for meat and groceries and other bills; that Mary O'Connor's father did not help her financially; that he did not have any means to do so. On cross-examination this witness said his mother was destitute and dependent at the time she got the money from Daniel J. O'Connor; that he has seen Daniel J. O'Connor pay his mother money fifty or sixty times.

Daniel J. O'Connor, a brother-in-law of Mary O'Con-

nor testified that he was a brother-in-law of Mary O'Connor; that he knew when she married his brother; that the decedent went to Chicago and lived with them; that they remained in Chicago about four years; then her husband went to Minneapolis about four or five months and Mary O'Connor went to Chatsworth at her father's and that decedent was with her there; then removed to Ottawa and decedent went with them and lived with them until her husband's death in 1901, and that decedent lived with her after her husband's death until about the time he married; that he left shortly before his marriage on account of diphtheria in Mary O'Connor's family; that after he married he lived a few days with his wife and then separated a few days; that he and his wife sort of spasmodically lived together and that this continued about one and one-half years; that after he and his wife separated he went to Mary O'Connor's to live and that was in 1907, and that Daniel J. O'Connor was buried from the house of Mary O'Connor beside his father.

No evidence was offered at all in opposition to the evidence tending to show that Mary O'Connor was dependent on Daniel J. O'Connor. We are of the opinion that Mary O'Connor was more or less dependent on Daniel J. O'Connor for her support up to the time of his death and that they were both members of the same family. If she was partially dependent even though not related to him she comes within the class mentioned in the statute and the by-laws of the insurance company. *Alexander v. Parker*, 144 Ill. 355; *Martin v. Modern Woodmen of America*, 111 Ill. App. 99.

The Supreme Court in *Royal League v. Shields*, 251 Ill. 250, has said that "a state of dependency may exist even though no legal or moral duty rests upon the member to give aid to the dependent. * * * While no definition of dependency can be given that will include every case and each case must be decided according to its particular merits, the word 'dependent,' as that term is used with reference to these fra-

ternal benefit associations, is in some sense, at least, used as similar to the dependence which usually obtains in the family relation.''

The question of dependency being purely one of fact, we are of the opinion that the competent evidence clearly establishes the dependence of Mary O'Connor, named in the benefit certificate.

Judgment affirmed.

*Affirmed.*