Doan, King & Co. *v.* Mauzey.

## DOAN, KING & CO.

*v.*

## HENRY G. MAUZEY.

1. JURISDICTION IN CHANCERY — *recovery of damages for breach of contract.* Unless in very special cases, a court of chancery will not sustain a bill for damages on a breach of contract. It is not the ordinary jurisdiction of that court It is a matter strictly of legal, and not equitable jurisdiction.

2. So, where a party who has executed a conveyance of land, exhibited his bill in chancery, praying for the specific performance of a contract to reconvey upon the performance of certain conditions, and, in the alternative, for damages for the non-performance of the contract, having knowledge, at the time of filing his bill, that his grantee had conveyed the premises to third parties, who had no notice of the complainant's alleged equities, and thereby had disabled himself from performing his contract to reconvey, it was *held,* the court of chancery had no jurisdiction to retain the bill for the purpose of awarding damages for a breach of the contract. In such case, the allegation in the bill of notice to the subsequent purchasers, when the complainant knew better, was regarded as intended merely to give color of jurisdiction to a court of chancery. As the complainant knew, at the time of filing his bill, that he could not obtain a specific execution of the contract, his remedy was not in chancery, but at law, upon the covenant.

3. EQUITABLE RIGHTS — *how lost.* Where a grantor of land, claiming to hold a contract for a reconveyance upon his performing certain stipulated conditions, promotes the sale of the property by his grantee to third persons, who have no notice of his alleged equities, and stands by, asserting no rights, while the subsequent purchasers are making improvements upon the property, and acquiring a reversionary interest, he is not entitled to the interposition of a court of equity in his behalf.

APPEAL from the Circuit Court of Adams county; the Hon. JOSEPH SIBLEY, Judge, presiding.

This was a suit in chancery instituted in the court below, on the 1st day of October, 1859, by Henry G. Mauzey against Doan, King & Co., and others.

It is stated in the bill that on the 6th of January, 1854, Mauzey, the complainant, was indebted to Doan, King & Co., in the sum of $2,483.87, on two promissory notes. That Mauzey then owned a building, situate on a lot in the city of Quincy, which he held by lease from John W. McFadden, running twenty years from April 1st, 1839, at the annual rent of $200, with right to purchase at $2,000 during the term.

That in January, 1854, Doan, King & Co., sent said notes for collection to Stephens & Wagley, attorneys-at-law, and it was agreed between Stephens & Wagley and the complainant that the latter should convey his interest in the premises mentioned to King, for the firm, and that Stephens & Wagley should give up the complainant's said notes, and that Doan, King & Co., should execute a memorandum as follows:

"We hereby agree that H. G. Mauzey shall have the privilege of purchasing the property on lot seven, block nine, in city of Quincy, this day sold and conveyed by him to Wyllys King, at the price of $5,000, if purchased within one year from this date; and that we will allow him the privilege of taking the same at that price, with interest from this day, at any time within five years, in preference to any other person, hereby giving him the refusal: This agreement is not intended to cover any part of the ground, which we may hereafter purchase.

DOAN, KING & CO.

January 6, 1854.                    Per STEPHENS & WAGLEY."

It is charged in the bill that in pursuance of this agreement, the complainant, by deed bearing date on the 6th of January, 1854, for the consideration therein expressed of $5,000, conveyed the premises to King, and that Stephens & Wagley, as agents for Doan, King & Co., at the same time gave up the notes and signed the above memorandum. That on the 6th of October, 1855, King, for the expressed consideration of $4,500, conveyed to A. & L. Buddee, and one Ruff; that Ruff, on the

8th of the same month, conveyed to the Buddees; and ·that McFadden, in pursuance of the lease, on the same day conveyed the fee to the Buddees, who have since executed various conveyances and incumbrances upon the premises.

The complainant alleges that on the 17th of December, 1858, he tendered to King $6,500, and demanded a deed, and King refused to accept the tender or to reconvey.

He charges that all the parties claiming under King, took with notice of the complainant's rights. He offers still to pay the $6,500, upon receiving a reconveyance.

The grantees of Doan, King & Co., and subsequent purchasers and incumbrancers, are made parties defendant, and their answers under oath waived. The prayer of the bill is in the alternative, for specific performance, or damages for ·nonperformance.

Doan, King & Co. answered the bill, admitting that the complainant owed them the two notes mentioned in the bill, besides a much larger sum; that complainant was in possession of the premises under the lease from McFadden; and that the notes were sent to Stephens & Wagley for collection. · The answer alleges that the sale and conveyance were absolute, and that the memorandum set out ·in the ·bill was not made, nor thought of, until some time after the deed was made, and that Stephens and Wagley had no authority to make any·such agreement.

·That the memorandum merely gives to the complainant the right of "refusal" of the property over other persons, at $5,000, whenever the same should be sold, and that he so understood it, and acted accordingly.

The answer·denies that Doan, King & Co. had any knowledge of such memorandum until shortly before the alleged tender, and alleges that the complainant never pretended to have any claim·to the premises until the tender was made.

The other·defendants answer, setting up that they were innocent purchasers and incumbrancers without notice.

Testimony was introduced ·upon the hearing in relation to the value of the premises, but the question upon which the decision of the case turns was developed in the. testimony of Isaac O.

Woodruff, who testified that he was employed by Doan, King & Co. as their agent to sell the property from the time they bought it until sold by him to the Buddees in 1855, during all which time he constantly offered the property for sale, and advertised it in the newspapers. The witness stated that during all this time Mauzey, the complainant, was fully cognizant of his agency and of his efforts to sell, and held several conversations with him about selling it; that Mauzey never, in said conversation, nor at any time while the witness was trying to sell the property, made any objections to the sale being made, nor pretended to have any claim to the property, but appeared anxious that it should bring as good a price as possible. Upon his cross-examination the witness stated that all the recollection he had of Mauzey's saying anything about the property was, that he thought it ought to bring the price first asked for it — $5,000. He could not say how the conversation was brought about, nor whether that remark of Mauzey's was anything more than an expression of his opinion as to the value of the property, but the witness thought at the time that Mauzey had turned the property over to Doan, King & Co. at that price, and wanted it to realize that much to them. He thought he derived that impression from what Mauzey said. He had no recollection of anything else said by Mauzey affecting the subject, although other things might have been said by him; they had frequent conversations on the subject. The witness' impression above stated came, he thought, from what Mauzey said. He did not infer that Mauzey was interested in the disposition of the property. He presumed that he did not wish Doan, King & Co. to lose anything by the purchase from him. The witness did not consult Mauzey about selling, because he supposed that he had no interest in it.

It also appeared in evidence that the complainant asserted no rights, while the Buddees, who purchased from Doan, King & Co., were making improvements upon the property, and acquiring the reversion from McFadden, of which he seems to have had knowledge at the time those things were being done.

The court below found that the memorandum set out in the bill

was executed by Stephens & Wagley; that all the defendants, except Doan, King & Co., were innocent purchasers, or incumbrancers, for value, and without notice. That Mauzey, by reason of the violation of the agreement of Doan, King & Co., had sustained damage up to January 6th, 1859, to the amount of $1,000; that it was out of the power of Doan, King & Co. specifically to perform their agreement, and decreed that within thirty days from the date of the decree, the defendants, Doan, King & Co., should pay to the complainant the said sum of $1,000, damages, with interest thereon at six per cent. per annum from January 6th, 1859, until the date of the decree, amounting to $1,254, and interest thereon from the date of the decree, and costs of suit. From that decree Doan, King & Co. took this appeal, and now assign for error, among other things, that the Circuit Court decreed damages to Mauzey for the supposed breach of contract, when his remedy, if any, was at law.

Messrs. BUCKLEY, WENTWORTH and MARCY, for the appellants.

It is alleged in the bill, that A. & L. Buddee and the other parties claiming title from the appellants, had notice of the rights of Mauzey, at the time the various conveyances and incumbrances held by them, were executed. No proof was made, or even attempted, in support of this allegation, and when the cause came on for hearing, the court dismissed the bill, as to all the defendants except Doan, King & Co. The case was thus converted into a mere common law action for damages upon the alleged contract. There was no equity left in it; no single circumstance appeared in the case to require any equitable relief. But the court retained the bill and assessed and decreed damages, for the alleged breach of the agreement. In this we insist the court erred, that the plaintiff's remedy, if he had any, upon the case as made by the proof, was ample at law, and that a court of equity is not the proper tribunal to give a judgment for unliquidated damages, upon an executory contract.

We admit fully, that it is a rule of courts of chancery, that when they have once properly acquired jurisdiction of a cause, they may proceed to determine the entire controversy, although in so doing, they may have to adjudicate upon common law questions, and apply purely legal remedies. But the court acquires its jurisdiction, not from the facts alleged by the complainant, but from the facts alleged and proved. If enough of the alleged facts are sustained by proofs to constitute an equitable case, then the court may proceed to administer complete justice between the parties. But if the case as proved is a purely common law case, the bill must be dismissed, no matter what fictitious equities are set up by the complainant, to give color of jurisdiction. If this were not so, any common law case whatever might be maintained in a court of equity, by simply alleging in the bill, with the actual facts in the case, fictitious equities sufficient to give jurisdiction.

It is claimed that the court has, in cases like the present, a concurrent jurisdiction with courts of common law. Concurrent jurisdiction exists in two classes of cases — cases in which courts of law give a remedy, but a less perfect one than can be afforded by courts of equity — and cases in which courts of common law formerly gave no remedy, but have since adopted one from the courts of equity. The present case falls into neither of these classes. Courts of common law have always afforded full and complete remedies in cases of this kind, by the assessment of damages, with the aid of a jury. Indeed, the assessment of unliquidated damages is regarded as peculiarly within the province of a jury, so much so that courts of equity frequently send issues of *quantum damnificatus* to the common law courts for trial. The case, for a specific performance, having been abandoned, the only remedy that the court could afford the complainant, was to find his damages and give him judgment and execution therefor, all which he could have got, and just as beneficially, by a suit in assumpsit. And if the court had jurisdiction in the present case, we are at a loss to understand upon what principle its jurisdiction could be denied, in a suit for any breach of an executory contract.

If the jurisdiction exists, it must be supported, not upon principle, but upon authority overwhelming enough to establish it against principle, and as a mere anomaly in our judicial system.

Now we insist that the weight of authority is not on the side of the asserted jurisdiction. In the English Court of Chancery nothing of the kind was asserted, until the case of *Denton* v. *Stewart* was decided by Lord KENYON, and this decision, after being followed with reluctance for a few years, was overruled by Lord ELDON in *Todd* v. *Gee*, 17 Vesey, 273, some fifty years ago, and we believe never afterwards followed. See *Sainsbury* v. *Jones*, 5 Mylne & Craig, 1, 3. Undoubtedly, many cases can be produced in which the court, upon a bill for specific performance, has given damages. But in the great majority of these cases, either the damages were given as incidental to equitable relief also afforded (as where a part only of the premises purchased could be conveyed by the vendor); or the remedy at law for damages was null, or incomplete (as where the contract would at law have been held void under the statute of frauds); or the vendor had disabled himself from performance, pending the suit, in which latter case, of course, jurisdiction would exist, at the time of filing the bill.

In New York, Chancellor KENT, after some fluctuation of opinion, adopted (in *Kemphall* v. *Stone*, 5 Johns. Ch. 195) a somewhat peculiar rule, which has much good sense to recommend it: "When the defendant had disabled himself, before the filing of the bill, and the plaintiff knew the fact, before he commenced his suit (and I consider such knowledge a material circumstance in the case), it is then reduced to the case of a bill filed for the sole purpose of assessing damages for a breach of contract, which is a matter strictly of legal and not of equitable jurisdiction. The remedy is clear and perfect at law, by an action of covenant, and if this court is to sustain such a bill, I do not see why it might not equally sustain one, in every other case, sounding in damages and cognizable at law." The appellants, in the present case, had disabled themselves before the bill was filed, and Mauzey knew it. He knew that his

contract was unrecorded, and he had no sort of reason, nor does he attempt to show any reason, for believing that the other defendants were purchasers with notice. And it is perfectly evident that his allegation to the contrary, and his prayer for a specific performance, were introduced merely to give color of jurisdiction to the court of chancery. See further, *Hatch* v. *Cobb*, 4 Johns. Ch. 560; 2 Story Eq. § 798; *Wiswell* v. *McGowan*, 1 Hoff. Ch. 125; *Morss* v. *Elmendorf*, 11 Paige, 277; *Lewis* v. *Yale*, 4 Fla. 418; *McQueen* v. *Chouteau*, 20 Mo. 222; 3 Leading Cases in Equity, 91.

The objection now taken is available at any stage of the cause, especially in a case like this, when the bill showed sufficient equity upon its face. *Coughran* v. *Swift*, 18 Ill. 414; *Woodside* v. *Woodside*, 21 Ill. 207; *Doyer* v. *Murphy*, 22 Ill. 502; Mitford Pl. 108; *Cummins* v. *White*, 4 Blackf. 362; *Bryan* v. *Blythe*, 4 Blackf. 248; *Chalmers* v. *Hack*, 19 Maine, 124; *Barrett* v. *Oliver*, 7 Gill. & J. 196; *Morss* v. *Elmendorff*, 11 Paige, 289.

It may be said that the vendor has his remedy in equity to enforce payment of his purchase-money, and that, by analogy, jurisdiction may be maintained in the present case. But the jurisdiction to compel payment of the purchase-money rests upon principles which have no application here.

1st. That the remedy thus afforded to the vendor is, in the strictest sense, a *specific* execution of the contract; for the vendee is simply compelled to do the precise thing he contracted to do, and not to do another thing in lieu thereof.

2d. That the remedy in equity is different from, and more beneficial than the remedy at law, namely, by making the purchase-money a specific lien upon the premises sold, and not by award of damages and execution. See *Anderson* v. *Sullivan*, 2 Gilm. 327, where the distinction between the legal and equitable remedy is distinctly recognized and defined. "A court of equity has the power to execute a contract, by compelling the parties to receive what they have contracted for, and to perform all they have agreed to do, but has no power to compel a party to receive something else, or to do other or different acts

from those agreed to be performed." *Stowe* v. *Robinson*, 24 Ill. 534.

Messrs GRIMSHAW & WILLIAMS, for the appellee.

Before the time expired within which Mauzey had a right to a reconveyance of the property, he tendered to Mr. King the amount necessary to redeem or repurchase his property, and on King's refusal, he filed a bill against him and all parties having any apparent or real interest in the premises or in the original transaction. The title to the property, as shown by the record, had been so entangled that it was unsafe and almost impossible for Mauzey to sue Doan, King & Co. at law for damages; the title was in such a condition that it was absolutely necessary to file a bill for a specific performance, and to ask in the alternative for damages if Doan, King & Co. could not specifically perform.

A debt due Doan, King & Co. had by their attorneys been surrendered to Mauzey; he had conveyed his property, a valuable leasehold interest in real estate with the addition of lasting and valuable improvements thereon, to King. King had entangled the property by conveyances, and the parties to whom he had conveyed had incumbered it. The bill charges notice to parties prior to Mauzey. The answers of defendants deny notice. If notice could be proved, a clear case for equitable relief, either by specific performance or compensation, was made out. The answers of adult defendants, and of the guardians of minors, deny notice as to them, and compel the dismissing of the bill except as to the principal parties, Doan, King & Co., who had got the benefit of the conveyance, and who seek to avoid its performance or to compensate Mauzey for its violation. If he had gone into a court of law for damages, he would have had to try complicated equities; when he goes into equity, they tell him, we never contracted with you, but if we did, after you have unraveled this skein, seek your remedy at law. Mauzey had no adequate remedy at law. He sought his remedy where he could discover what the rights and interests of the parties were, and where, if the parties originally in interest, Doan, King

& Co., had, by their own acts, placed it out of their power to fulfill their contract, they could be compelled to answer in damages for their default. In addition to that, the interest of Mauzey was a leasehold interest which King used to procure the fee under Mauzey's contract.

The authorities are somewhat conflicting as to the power and duty of a court of equity in cases of this class, but when exam-. ined, show that the court will entertain jurisdiction wherever, when the suit was commenced, there was not a plain, tangible legal remedy. The court will entertain jurisdiction in any case in which it can lay hold of a simple equitable and precise rule to ascertain the amount which it ought to decree. *Pratt* v. *Law,* 9 Cranch, 494.

A bill was filed to enforce a specific performance of contract creating a lien under a land contract; part of the contract was to deliver 500 saw logs. The court asserts and exercises its right to assess damages with interest. *Taylor* v. *Read,* 4 Paige, 572.

A bill was filed for specific performance of a parol contract; specific performance denied and bill returned for purpose of assessing damages. *Phillips* v. *Thompson,* 1 Johns. Ch. 150.

The propriety of assessing damages is recognized in *Woodcock* v. *Bennett,* 1 Cow. 755.

A bill was filed, too, for specific performance of a building contract. Specific performance was refused and cause retained and issue directed to assess damages. *City of London* v. *Nash,* 3 Atk. 516; see Law Library, No. 69, Fifth Series; Fry on Specific Performance, 32.

There is certainly good reason why, in a case of this sort, it was necessary to file this bill, and after it was filed and thereby a case made which entitled complainant Mauzey to relief, the court, if it could not grant relief by decreeing specific performance, should assess the damages.

Mr. JUSTICE BREESE delivered the opinion of the Court:

It is very manifest from the proofs in this case, that the appellee knew, when he filed his bill for a specific performance,

Doan, King & Co. *v.* Mauzey.

that the appellants had disabled themselves from performing the contract to convey, if one existed. He knew the contract he took from Stephens & Wagley was not recorded, and had no reason to believe the purchasers from his grantors, the appellants, had any notice whatever of his alleged equities. The object of the bill, then, was not for a specific performance, but was for the purpose of obtaining compensation in damages for the non-performance of the alleged contract by appellants. The bill cannot be supposed to have been filed in good faith for a specific performance on the supposition that the appellants were able to perform the contract made by Stephens & Wagley, as their agents, specifically. The complainant knew better, and his allegation of notice was introduced merely to give color of jurisdiction to a court of chancery. This being so, the bill should have been dismissed. Unless in very special cases, and this is not one, a court of chancery will not sustain a bill for damages on a breach of contract. It is not the ordinary jurisdiction of that court. It is a matter strictly of legal and not of equitable jurisdiction. The remedy is clear and perfect at law by an action upon the covenant. *Kempshall* v. *Stone*, 5 Johns. Ch. 195; *Hatch* v. *Cobb*, 4 id. 559; *Morss* v. *Elmendorff*, 4 Paige, 277; *Lewis and Wife* v. *Yale*, 4 Florida, 437; 3 Leading Cases in Eq. 91; *McQueen* v. *Chouteau's Heirs*, 20 Missouri, 222.

While we do not undertake to pass upon whatever rights the appellee may have at law, we may be permitted to say, his conduct in promoting the sale and standing by asserting no rights while the Buddees were making improvements on the property and acquiring the reversion, was such as not to require of this court any special interposition in his behalf. It is not a case demanding the interference of a court of equity, as the facts plainly show. The decree is reversed and the bill dismissed.

*Decree reversed.*