HOLMES JONES,

*vs.*

JOSEPH L. CARPENTER, JUNIOR, JOSEPH L. CARPENTER, JUNIOR, as Trustee under the Last Will and Testament of William Thatcher, deceased; AUBREY THATCHER; JOSEPH L. CARPENTER, SENIOR; CHARLES M. ALLMOND and FRANK P. TURNER, as Surviving Administrators of the Estate of John P. ALLMOND, deceased; JOSEPH L. CARPENTER, JUNIOR, and HARRY P. CARPENTER, as Executors of James L. Carpenter, deceased; LANDLITH IMPROVEMENT COMPANY, a corporation of the State of Delaware; EQUITABLE TRUST COMPANY, a corporation of the State of Delaware; FIDELITY REAL ESTATE IMPROVEMENT COMPANY, a corporation of the State of Delaware; and JOSEPH A. VOGEL COMPANY, a corporation of the State of Delaware.

*New Castle, April 5, 1922.*

In a suit by a vendor against a vendee for specific performance of a contract for the sale of land, evidence regarding transactions with respect to the land which took place before title was vested in the defendant will be rejected as immateral.

Specific performance will not be granted the vendor where, after making the contract and before the suit, he conveyed the land to a *bona fide* purchaser for value and without notice.

Damages in lieu of specific performance because of vendor's inability to perform will not be awarded, where the vendee knew of the inability before bringing suit, though the inability was caused by a wrongful act of the vendor.

If time is of the essence of a contract to sell land, it must be performed within the time named therein; if not of the essence, then it must be performed within a reasonable time, and the vendor cannot terminate the contract without allowing a reasonable opportunity to the vendee to perform.

Where the owner of land contracted to sell it, and before the time of performance provided in the contract sold the land to another, the one thus purchasing would hold the land subject to the equitable rights of the original vendee, providing he had notice of the existence of the contract.

Where the vendor twice extended the time for performance at the request of the vendee, and after the last extension had expired notified the vendee that he was yet willing to sell the land, and for the vendee to submit a new

contract, and that he would claim the privilege of selling the land to another if the contract was not satisfactory, and later notified the vendee that all negotiations were at an end, after the vendee had submitted a contract which was not satisfactory, the vendee was not entitled to a specific performance of the original contract.

BILL FOR SPECIFIC PERFORMANCE of a written agreement to sell real estate. After the bill of complaint was amended in conformity with the opinion heretofore filed (12 *Del. Ch.* 272, 112 *Atl.* 374), the cause was pleaded to issue and was heard on amended bill, answers, testimony of witnesses heard orally by the Chancellor and exhibits.

On June 10, 1919, Joseph L. Carpenter, Jr., one of the defendants entered into a written agreement "to sell and by good warranty deed convey" unto Holmes Jones, the complainant, a piece or pracel of land situate in the city of Wilmington, bounded by Church, Locust, Fourteenth and Sixteenth streets, in consideration of the sum of six thousand dollars, one hundred dollars, of which was payable at the signing of the agreement, nine hundred dollars payable within four months, and the balance to be secured by a mortgage for five thousand dollars, payable within three years at four and one-half per cent., with a provision that the mortgagee should satisfy and discharge the mortgage upon payment of the sum of four thousand dollars at any time within nine months from the date thereof.

At the request of the purchaser, the complainant, the time for making the above stated payments was extended to December 20, 1919. The complainant failed to make settlement on December 20, 1919, and nothing was thereafter done by him until after January 22, 1920, on which date Carpenter called attention to the matter, as follows:

"Jan. 22, 1920.

"Mr. Holmes Jones, Dear Sir: In thinking over the matter of sale of the square of land Fourteenth to Sixteenth and Church to Locust, I think we should have a settlement, or probably a new contract, as the original one expired some time ago, and the extension I gave you of two months has ex-expired, and the ten days extension which you asked for afterwards to December 20th. has also expired.

"But I am willing to consummate this sale at present notwithstanding the numerous delays, if you expect to take it in good faith; otherwise, unless a

contract is made which will be satisfactory to me I shall claim the privilege of selling it to any other person who will accept my terms.

"Yours very truly,

"Jos. L. Carpenter, Jr."

This letter resulted in some correspondence between Carpenter and Jones, and finally Carpenter wrote the following letter:

"Feby. 13, 1920.

"Mr. Holmes Jones, 823 Shipley St. Dear Sir: I am in receipt of your new contracts, which I suppose you have drawn up to suit yourself, but they are not satisfactory to me, and I decline to sign them.

"And I hereby notify you that all negotiations for the purchase of the property in question is at an end, and all contracts heretofore made and the various extentions thereof, none of which have yet been carried out according to their contents, are hereby cancelled, as you have not complied with the conditions in any of them.

"Yours truly,

"Jos. L. Carpenter, Jr."

Thereafter, on March 9, 1920, the property in question was conveyed by Carpenter to the Joseph A. Vogel Company, one of the defendants, and on May 12, 1920, the complainant filed his bill in this court alleging defects in the title to the land, his agreement with Carpenter, and knowledge of the Vogel Company of his rights under the contract.

At the hearing it was conceded that the acts of Joseph L. Carpenter, Jr., bound the Landlith Improvement Company and Fidelity Real Estate Improvement Company, in which companies was vested the title to the real estate at the time of the signing of the contract with Jones.

Numerous defendants other than Joseph L. Carpenter, Jr., Landlith Improvement Company, Fidelity Real Estate Improvement Company and Joseph A. Vogel Company were joined in the bill because they appear in various ways to have been interested in the real estate involved. Their interest was connected with matters in the chain of title prior to the time when it devolved upon the Landlith Improvement Company, from whom the title came to Fidelity Real Estate Improvement Company, which companies, as before stated, Carpenter was authorized to speak for. The theory upon which these numerous defendants were joined

was, that there were certain defects in the chain of title which the complainant contended the court could properly correct in case a decree for specific performance was entered. It was, therefore, necessary, according to the contention of the complainant, to join as parties those individuals in connection with whose interests the alleged defects existed.

When evidence was offered for the purpose of establishing the existence of these alleged defects in the title, the Chancellor sustained objections thereto, holding the evidence to be irrelevant. In this particular he accepted the view of Chancellor Curtis when the same case was before him on a motion to expunge certain allegations of the original bill of complaint. 12 *Del. Ch.* 272, 112 *Atl.* 374.

The prayers of the bill ask that the deed to Vogel Company be decreed null and void; that Carpenter, or the two corporations, be required to convey the land to the complainant upon compliance with the terms of the agreement; and—

> "that in the event a good and marketable title of said premises is not awarded and decreed to be given by the conveyance this Honorable Court is asked that decree be given to the complainant, upon the payment of the balance of the purchase price as aforesaid, that the complainant have judgment against the respondent Joseph L. Carpenter, Jr., and such of the other respondents as shall not have been found to have given due satisfaction or conveyance of the rights they have in and to said premises, and disclose same to the record before or during the trial hereof, for the sum of $83,050.00."

The complainant admitted during the hearing that he had made no tender of the cash and mortgage due under the agreement.

At the conclusion of the complainant's testimony motions were made on behalf of all of the defendants to dismiss the bill for want of evidence to sustain the allegations of the bill, and those motions were duly argued.

*Holmes Jones*, in *propria persona.*

*David J. Rinehardt*, for Joseph L. Carpenter, Jr., and others.

*Clarence A. Southerland*, for Joseph A. Vogel Co.

THE CHANCELLOR (orally). If I should defer deciding this case in order to write an opinion, it would be some time before I could take it up. I am very clear how the present motion ought

to be decided, and prefer to decide it now, stating briefly the governing thoughts that are in my mind. If they are wrong, the complainant has his remedy by way of appeal.

I do not propose to discuss the reason why the bill against the numerous defendants, other than Joseph L. Carpenter, Jr., individually, the Landlith Improvement Company, Fidelity Real Estate Improvement Company and the Joseph A. Vogel Company should be dismissed. The rulings which I have made concerning the admissibility of the evidence in this case disclose why the bill ought to be dismissed against those defendants; and what I have to say about Joseph L. Carpenter, Jr., will refer to him individually and the two companies, Landlith Improvement Company and Fidelity Real Estate Improvement Company, which it is admitted in substance are Joseph L. Carpenter, Jr.

As against Joseph L. Carpenter, Jr., individually, I think the bill should be dismissed. I rest that view on the fact that he has not been since the filing of the bill, and was not at the time of the filing of the bill, able to specifically perform the contract in question. He did not have title to the property at the time of the filing of the bill; he had conveyed it to the Vogel Company. So that this court neither at the time of the filing of the bill, nor since that time, could have effectively carried out a direction to Joseph L. Carpenter, Jr., to convey the land. In 4 *Pomeroy's Equity Jurisprudence*, (*4th Ed.*) § 1405, in a note I find the law to be laid down, as follows:

"If at the time of the inability the defendant is totally unable to perform because he has no title at all, or a title completely defective, the remedy will not be granted. Mere pecuniary inability to pay the price is not, however, such an incapacity as the rule assumes. * * * The rule applies even when the inability is caused by the defendant's own wrongful act; as where a vendor, after making the contract and before the suit, conveyed the land to a *bona fide* purchaser for value and without notice. A specific performance would be refused, although the court of equity might grant a decree for damages"—citing cases.

So that Joseph L. Carpenter, Jr., having conveyed the land prior to the filing of the bill, under that principle of law, there can be no decree against him for specific performance. Should the court, however, retain control over the bill in order to decree damages against him? If it be granted that a court of equity may

decree damages in lieu of specific performance when the latter remedy is rendered impossible by the act of the defendant in conveying away his title, yet it should not be done in this case, for at the time of the filing of the bill the complainant knew Joseph L. Carpenter, Jr., could not perform the contract, and there was, therefore, no equitable right for him to come into a court of equity and seek the conveyance. The only thing pursuable was damages, and it was not proper for a bill seeking damages to be filed, the complainant knowing that Carpenter could not convey title. That view is supported by this citation from 1 *Pomeroy's Equity Jurisprudence*, (*4th Ed.*) § 238, and note:

"The following rules have been established by American decisions: If through a failure of the vendor's title, or any other cause, a specific performance is really impossible, and the vendee is aware of the true condition of affairs before and at the time he brings his suit, the court, being of necessity obliged to refuse the remedy of specific performance, will not, in general, retain the suit and award compensatory damages, because, as has been said, the court never acquired a jurisdiction over the cause for *any* purpose."

An examination of the following cases in support of that proposition fully sustains it: *Hatch v. Cobb*, 4 *Johns. Ch.* (*N. Y.*) 559; *Kempshall v. Stone*, 5 *Johns. Ch.* (*N. Y.*) 194; *Morss v. Elmendorf*, 11 *Paige* (*N. Y.*) 277; *Smith v. Kelley*, 56 *Me.* 64; *McQueen v. Chouteau's Heirs*, 20 *Mo.* 222, 64 *Am. Dec.* 178; *Gupton v. Gupton*, 47 *Mo.* 37; *Doan v. Mauzey*, 33 *Ill.* 227; *Milkman v. Ordway*, 106 *Mass.* 232; *Sternberger v. McGovern*, 56 *N. Y.* 12.

For these reasons I think the bill against Joseph L. Carpenter, Jr., individually, should be dismissed.

Now, that leaves the Vogel Company and its situation to be considered. If there was a valid binding contract for the purchase of this land by the complainant from the defendant, Joseph L. Carpenter, Jr., at the time the Vogel Company bought the land and the Vogel Company knew of it, or had such degree of notice as would fix upon the Vogel Company knowledge of the existence of the contract, the Vogel Company would hold the land subject to the equitable rights of the vendee. The case against the Vogel Company, is, therefore, to be determined by an answer to either one of two questions. First, was there a valid outstanding, exist-

ing contract between Joseph L. Carpenter, Jr., and the complainant, Holmes Jones, at the time the Vogel Company purchased the land? Secondly, if there was, did the Vogel Company have notice of it—notice within the meaning of the law?

The contract is attached to the bill of complaint, and I need not quote it. I think it is conceded on all sides—whether we call it a contract or an option to purchase—that it was alive at least until December 20, 1919. It was dated June 10, 1919, and, therefore, so far as the issues on both sides go, it continued by its terms for a period of six months. I shall not stop to discuss whether it was an option or a contract, for I do not think that question is necessary to be considered, taking the view of the case I do. On January 22, 1920, a period of over a month after the time for performance under the terms of the contract had expired, Joseph L. Carpenter, Jr., the vendor, notified Holmes Jones, the vendee, that he must in good faith prepare to take the property, or he (Carpenter) would sell the land to other persons. That letter evidently brought affairs between the parties to a head. I do not have to stop to consider whether time was of the essence of the contract. If it was, manifestly the complainant has no case. I will assume it was not. Assuming it was not, then the vendor could not, of course, terminate the contract in such a way as would be tantamount to an advantage over the other party. This contract was to be performed on or before December 20, 1919. If time was of the essence of the contract, it had to be performed by then. If it was not, before the vendor could take advantage of any default, he would have to give reasonable opportunity to the vendee to perform. Did Joseph L. Carpenter, Jr., give the complainant a reasonable opportunity?

As I said, on January 22, 1920, the vendor notified the complainant that unless something was done, he was going to sell the land. The vendor had the right to insist that the vendee exercise his right to purchase within a reasonable time. The vendee could not take his own time to purchase the property. When called upon to act, it was his duty to do so with reasonable expedition. The letter of January 22d prompted Jones to start negotiations for a new contract. I think the evidence shows, how-

ever, that no new contract was entered into, and the complainant must, therefore, stand or fall on the contract dated June 10, 1919.

Now, after notifying the complainant, as stated, negotiations were started and nothing came of them. On January 26th Joseph L. Carpenter, Jr., the vendor, stated in another communication to Holmes Jones, the vendee, that unless he did something, Jones could consider the letter of January 26th as notice that the contract of purchase was cancelled. Jones did nothing, except to prolong his bargaining. He was given notice then that he was expected to perform. That letter, in substance, was a demand and Carpenter had a right to demand of Jones that he perform. Then later, on the 13th of February, some correspondence intervening, Carpenter notified Jones that he was done, and that he considered the contract cancelled. In substance, Joseph L. Carpenter, Jr., practically notified Holmes Jones that he was done with it and recognized no obligations under the contract dated June 10, 1919. That was on February 13, 1920. That was the position taken by Joseph L. Carpenter, Jr., and it was a period of nearly two months after the contract and its extensions had run out. Jones failed to make settlement. If Jones desired to carry out the contract, and if his view was that Joseph L. Carpenter, Jr., had no right to cancel it, he should have acted promptly by filing his bill immediately and pursuing his rights. He did not do that, but rested for a period of three months. There was a clear and explicit notice on the part of the vendor that he considered the time was up. Now, if he was wrong, the complainant could have immediately pursued his remedy against Joseph L. Carpenter, Jr., and tried out the question.

My own view of the matter is that the defendant, Joseph L. Carpenter, Jr., treated the complainant, Holmes Jones, very indulgently. I cannot see anything in the evidence that indicates a disposition to take advantage of Jones. It seems to me Mr. Carpenter acted very fairly and was reasonable; he extended the time for performance of the contract on two occasions, and he finally said, "I am done." I think his conduct is justified, and so my view is that the complainant had no right to specific performance of this contract under its terms as against Joseph L. Carpenter, Jr., at the time the Vogel Company purchased the land from Joseph L. Carpenter, Jr., in March.

It being my view that the complainant, Jones, had no right against Carpenter, it matters not whether the Vogel Company had notice, because the only theory on which that company can be held liable depends upon the primary right of the complainant against Joseph L. Carpenter, Jr. It is, therefore, not necessary for me to consider the question of notice to the Vogel Company. I think, however, that the circumstances of this case are such as to disclose the Vogel Company did not have such notice as the law requires, and such as would make it liable for a decree to convey the land to the complainant. In other words, I regard it as a purchaser for value without notice.

A decree will be entered dismissing the bill against all of the defendants with costs on the complainant. The dismissal of the bill will be without prejudice to the complainant's right to pursue a suit at law against Joseph L. Carpenter, Jr., for damages. I say this, because the dismissal of the bill as against Carpenter is based solely on the point that at the time of its filing Carpenter had put it out of his power to convey and this was known to the complainant.

Let a decree be entered accordingly.