DALLAS D. CULVER and GEORGE H. CULVER *v.* ROBERT B. ELLIOTT, individually, and EVA T. ELLIOTT, his wife, ROBERT B. ELLIOTT, KARL K. BROWN and MAUD E. LANK as executors and testamentary trustees of William T. Lank, deceased, and MAUD E. LANK, widow of William T. Lank, deceased.

(*August* 5, 1940.)

RODNEY, J., sitting.

*Houston Wilson* for plaintiffs.

*Tunnell* and *Tunnell* for defendants.

Superior Court for Sussex County, No. 1, June Term, 1940.

RODNEY, J., delivering the opinion of the Court:

It is a trite expression that all rules of construction of wills have for their object the ascertainment of the intent of the testator. So fundamental is this object that it constitutes the sole reason for the existence of rules of construction, and no one would have the temerity to advocate a rule which operates otherwise.

The plaintiffs, in order to sustain their position, rely upon three rules, as follows:

1. That the intent of a testator is determined by a reading of the testamentary instrument as a whole and not by the isolated meaning of the separate provisions thereof.

2. That a testator is presumed to intend that meaning which benefits most the natural objects of his affection.

3. That an apparently greater interest devised in a prior item of a will may be reduced by a testator in the

subsequent provisions of his will if he employs language equally clear and explicit, disclosing an intent so to do.

(2)  There can be no question as to the soundness of the first contention, and the entire testamentary disposition must and will be examined to ascertain the intent. The second Rule does not constitute an absolute presumption and, in view of the conclusion herein reached, need not be further considered.  The present case furnishes little occasion for the application of the third rule.  Here there is no estate given by the first item which is cut down or reduced by later provisions.  By the first item an absolute fee simple estate is given.  The later provisions either have no effect whatever upon the first item or they totally abrogate and repeal it.  The two provisions can not stand together as applying to the same property, and if they do refer to the same property they are in irreconcilable conflict.  With some reason then it is sought to sustain the rule that when two bequests are utterly repugnant and irreconcilable the latter prevails over the former.  For this rule much authority could be cited.  The rule, however, has been sharply criticized on the ground that often the order or arrangement of the will is not that of the testator but of counsel or scrivener, and that all parts of the will are executed at the same time. 1 *Page on Wills, Sec.* 821; 1 *Underhill on Wills, Sec.* 359.  As to this rule Chancellor Wolcott, in *Heney v. Manion,* 14 *Del. Ch.* 167, 123 *A.* 183, 184, said:

"It is true that in construing wills where irreconcilably repugnant provisions appear in the, same instrument, courts have upon occasions resorted to the somewhat arbitrary rule that the later expression of testamentary intent shall prevail over the earlier.  But this rule when followed, is adopted only as a last resort and then only for the purpose of avoiding a complete frustration of the testator's wish."

There is, I think, a rule of universal recognition which completely disposes of the present question.  It is a rule that where a testator makes a general devise or be-

quest which includes his whole estate, and by other portions of his will makes specific dispositions, these must be regarded as explanations or exceptions out of the general disposition and it will not be important in such case whether the general or specific provision comes first since, in either case, the general disposition will be regarded as made subject to the specific one. *Matter of Donner's Ex'rs, 65 N. J. Eq.* 691, 55 *A.* 1104.

In *Re Conner's Estate,* 302 *Pa.* 534, 153 *A.* 730, 731, it is said:

"Where there is an irreconcilable conflict, a general clause must always give way to one that is specific; the general being treated as including only that which is not specifically given."

*Theobald on Wills* (*5th Ed.* 659) declares the rule to be that where a gift of all testator's property is followed by gifts of specific portions of it, or vice versa, both gifts shall take effect. To the same effect are *Waring v. Bosher,* 91 *Va.* 286, 21 *S. E.* 464; *White v. Crawford,* 87 *Mo. App.* 262; *In re Construction of Will of Francis Willis,* 25 *R. I.* 332, 55 *A.* 889; *Board of Administration v. Stead,* 259 *Ill.* 194, 102 *N. E.* 173; *Classen v. Freeman,* (*Tex. Com. App.*) 236 *S. W.* 979; *Schlater v. Lee,* 117 *Miss.* 701, 78 *So.* 700; *Paiko v. Boeynaems,* 22 *Haw.* 233; *Lidgate v. Danford,* 23 *Haw.* 317.

■ It is observed that a specific provision in the agreed statement of facts stipulated that both at the time of the execution of the will of James F. Brown, and of the codicil thereto, that James F. Brown and his brother, Edward B. Brown, owned, as tenants in common, other properties besides the property mentioned in Item One of the will.

I am of the opinion that under Item One of the will of James F. Brown, the interest of the said James F. Brown of and to the property therein mentioned was vested in his

brother, Edward B. Brown, in fee simple, unaffected by other provisions of the will or codicil.

2. I shall but briefly state the reasons which, in my opinion, prevent the agreement of sale of April 18, 1930, between Emma Mabel Coates and Hover and Connelly, from interfering with the consummation of the present sale.

By the agreement payments were to be made by Hover and Connelly periodically from April 18, 1930 to December 1, 1930, when final adjustment was to be made. It does not appear to what extent or on what dates the purchasers were in default, but on July 12, 1931, Miss Coates filed a Bill for Specific Performance of the contract. Now either the time stipulated for the payment of the purchase price by Hover and Connelly was of the essence of the contract or it was not, and it is not necessary to determine this precise question. If time was of the essence of the contract, then the rights of Hover and Connelly were terminated upon their non-compliance at the time stipulated. If it was not, then before Miss Coates could take advantage of default she would have to give reasonable opportunity to perform. This was the specific holding of Chancellor Wolcott in *Jones v. Carpenter*, 13 *Del. Ch.* 172, 117 *A.* 559. This opportunity to perform and evidence of demand is shown by the Bill for Specific Performance on July 12, 1931, when Connelly objected to the title of Miss Coates and asked that the Bill be dismissed and that he be not required to take title. I think it too clear for argument that Hover and Connelly could not take their own unlimited time to purchase the property, but were required to act with some reasonable expedition. More than ten years have now elapsed from the making of the agreement, and I think any rights thereunder have long since expired.

The agreement of sale provides that possession of the

premises should pass to Hover and Connelly, but that in the event that Hover and Connelly "shall fail or refuse to make the payments as aforesaid stated, or fail to execute the said mortgage and bond as aforesaid stated, then and in that case the said party of the first part [Miss Coates] shall have immediate possession of said farm." The agreed statement of facts contains little information concerning the possession, but it seems quite clear that the possession either continuously remained in Miss Coates or was reinvested in her at or before the time of the filing of the Bill for Specific Performance. It afterwards remained in her until she made her deed to Lank and Elliott on April 3, 1939.

While Hover does not appear to have been personally served with process in the Bill for Specific Performance, yet it may be noted that, upon the dismissal of the Bill in 1935, Chancellor Wolcott states it was done with the consent of the solicitor for the "defendants"—using the plural signification.

The title tendered by the defendants is not defective by reason of either of the two objections specifically presented to me. Under the terms of the agreed statement of facts, therefore, judgment will be rendered in favor of the defendants.