THE BOARD OF ADMINISTRATION *et al.* Appellees, *vs.* WIL-
LIAM H. STEAD *et al.*—(THE WASHINGTONIAN HOME
OF CHICAGO, Appellant.)

*Opinion filed June 18, 1913.*

1. WILLS—*when a devise in will is specific.* A devise of spe-
cifically described premises to a named trustee, to hold the prop-
erty in trust, manage and improve the same and invest the income,
and to hold the same until such time as an insane asylum shall be
organized in the northern part of the State of Illinois, then to con-
vey the premises to the authorities of the asylum in trust for speci-
fied purposes, is a specific devise.

2. SAME—*specific provisions of will prevail over general provi-
sions.* Specific provisions of a will will prevail over general pro-
visions in case of inconsistency or doubt, particularly where the
general provisions concern the residuary clause of the will, which
is ordinarily introduced to prevent intestacy, and where the will
bears unmistakable evidence of great care and accuracy in its
preparation.

3. SAME—*when codicil does not modify specific devise.* A de-
vise of described premises to a named trustee, to hold, manage
and improve the same and invest the income "until such time as
an insane asylum shall be organized, located and established in
the northern part of the State of Illinois under and by virtue of
some State or municipal authority or some charter which shall
give to the institution a character of permanence and stability,"
(the asylum to be established and put in full and successful oper-
ation within six years after the testator's death,) is not modified
by a codicil providing that in case any of the asylums or institu-
tions which are named in the will as recipients of any part of the
testator's property shall not be established as incorporated insti-
tutions within three years after the testator's death their bequests
shall be divided among the others who are made recipients under
the residuary clause, where there are numerous asylums and in-
stitutions specifically named as recipients in the residuary clause
to which the codicil can apply.

4. COSTS—*allowance of costs in chancery case is largely with-
in discretion of the chancellor.* Where a testator has expressed
himself so ambiguously as to make it necessary or advisable to re-
sort to equity for a construction of the will to aid in the proper
and safe administration of the estate, it is proper to order costs
and solicitor's fees paid out of the estate; but the allowance of

costs in chancery proceedings, except upon the dismissal of a bill, is within the sound legal discretion of the chancellor.

5. SAME—*when solicitor's fees cannot be allowed as costs on dismissal of bill.*  Where a bill is not filed for the purpose of obtaining a construction of a will but to obtain the advice of the court as to the making of a certain lease of trust property devised by the will, the fact that a cross-bill is filed asking for a construction of the will and claiming title in the cross-complainant does not authorize the allowance of solicitor's fees as costs upon the dismissal of the bill.

6. SAME—*when dismissal of cross-bill at the cost of the cross-complainant is not error.*  Where a bill is filed to obtain the advice of a court of chancery with reference to leasing trust property which has been in the possession of the complainant, as an agency of the State, for many years under a deed made in pursuance of a Supreme Court decision rendered more than thirty years before the bill was filed, it is not error, upon dismissing a cross-bill claiming title in the cross-complainant and asking for a construction of the will creating the trust, to dismiss it at the cost of the cross-complainant.

APPEAL from the Superior Court of Cook county; the Hon. WILLIAM E. DEVER, Judge, presiding.

A. W. MARTIN, and EDWARD H. S. MARTIN, for appellant.

FOREMAN, LEVIN & ROBERTSON, for appellees.

Mr. JUSTICE VICKERS delivered the opinion of the court:

The Board of Administration filed a bill in chancery in the superior court of Cook county against the Attorney General and a number of corporations and associations who were supposed to be interested as devisees under the last will and testament of Jonathan Burr, praying for advice and instruction in regard to the execution of a ninety-nine year lease upon the east half of the east half of lot 6, in block 33, in the original town of Chicago, otherwise described as Nos. 174 and 176 West Randolph street, in said city.  It is alleged in the bill that said premises are now

under lease to Frederick T. Hoyt, which lease expires on May 1, 1922, at a ground rental of $1600 per annum; that said Hoyt owns the building and improvements on the premises and has applied for a new lease for ninety-nine years, offering to surrender his present lease and pay rent under the new lease of $2400 per year for the first ten years and $4000 per year for the remainder of the term. The complainant, as successor of the board of trustees of the Illinois Northern Hospital for the Insane at Elgin, claims title to the premises under the last will and testament of Jonathan Burr, deceased. William H. Stead, as Attorney General, and the following incorporated societies or institutions, were made defendants: The Washingtonian Home of Chicago, the American Bible Society, the Chicago Protestant Orphan Asylum, the Chicago Orphan Asylum, the city of Chicago, the Board of Education of the City of Chicago, the Chicago Erring Women's Refuge for Reform, the Chicago Refuge for Girls, the Nursery and Half Orphan Asylum, the Chicago Nursery and Half Orphan Asylum, and the Home for the Friendless. Of these defendants the Washingtonian Home alone answered the bill, in which it denies that the complainant has any interest in or title to the said property, and claims that the premises in question belong to the Washingtonian Home and the other corporations named as defendants, as residuary devisees under the last will of Jonathan Burr. The Washingtonian Home filed a cross-bill, alleging that it is one of the residuary legatees under the Burr will, and as such, with its co-defendants to the said original bill other than the Attorney General, is the owner of the premises in controversy. The prayer of the cross-bill is that the last will and codicil of Jonathan Burr may be construed by the court and its meaning ascertained and declared; that an account may be taken, under the direction of the court, of the amount of rents, income and profits of said real estate which may have been received by the Board of Administration, and that a decree

be entered requiring said board to pay cross-complainant and the other corporations made defendants to the original bill whatever amount may be found due, and prays for a partition and division of the real estate involved among the corporations that may be found to be entitled to the same, and in case said premises cannot be divided, that a decree of sale may be entered and a distribution of the proceeds made. The Board of Administration and Frederick T. Hoyt, who was made a defendant to the cross-bill, filed a demurrer to the cross-bill, which was sustained, and cross-complainant electing to stand by said cross-bill, the same was dismissed at the cost of cross-complainant, and the original complainant was permitted to dismiss its bill at its own costs, without prejudice. The Washingtonian Home prayed for and was granted an appeal to this court.

In order to determine whether the court erred in sustaining the demurrer and dismissing the cross-bill it will be necessary to state with some particularity the facts set up in the cross-bill.

Jonathan Burr died February 4, 1869, leaving a will and codicil, by which he devised the real estate in controversy to Thomas B. Bryan in trust, for the benefit of an insane asylum if one should thereafter be established in the northern part of Illinois. The original will by the first clause directs the payment of all just debts and funeral expenses. By the second to tenth clauses, inclusive, the testator bequeaths specific amounts of money to various relatives. The eleventh clause bequeaths $20,000 to certain trustees named, to invest and pay the income to Lucy Jane Biglow during her natural life and at her death to pay $2000 to each of her children, the balance to go into the residuary fund. The twelfth clause gives $2000 to the Chicago Historical Society in trust, to invest and use the income towards defraying the expenses of its publications. The thirteenth clause devises certain real estate in Chicago to the Home for the Friendless in trust, three-fourths of

the income of which is to be expended in furtherance of
the objects and purposes for which said institution was or-
ganized and the other one-fourth of the income to be ex-
pended in promoting the objects of an institution located on
Third avenue, in Chicago, and known as the Burr Indus-
trial and Mission School and Free Chapel. The fourteenth
clause, by which the property in controversy was devised to
Thomas B. Bryan, is in the following language:

"*Fourteenth*—To Thomas B. Bryan I give, devise and
bequeath the east half of the east half of lot 6, in block 33,
in the original town of Chicago aforesaid, with the build-
ings and improvements thereon, to have and to hold the
same to him, his heirs and assigns forever, but in trust, how-
ever, to and for the following uses and purposes, namely:
In trust to hold, manage and improve the same and the
net annual income thereof to invest, and the same to hold
until such time as an insane asylum shall be organized, lo-
cated and established in the northern part of the State of
Illinois under and by virtue of some State or municipal
authority or some charter which shall give to the institution
a character of permanence and stability, and then in further
trust to convey and transfer said premises, and the accu-
mulated income therefrom, to the authority or corporation
managing and controlling said asylum, but in trust, however,
to hold, manage, improve and invest the same, and the net
annual income thereof to use and expend in and towards
keeping and maintaining such asylum in a condition to re-
lieve those who are so unfortunate as to need its treatment
and care; and in case an effort reasonably promising suc-
cess shall be made by some competent authority to establish
such an asylum, the said trustee is hereby authorized, at his
discretion, to aid it, from time to time, in the erection of
suitable buildings therefor to the extent of the net income
of said property which may be in his hands, but in case
such an asylum shall not be established and put in full and
successful operation within six years after my decease, then

in further trust to convey and transfer said premises, and the net accumulated income therefrom, to my executors hereinafter named, or the survivors or survivor of them, and the same to be by them sold and conveyed and converted into money and cash securities, and the proceeds thereof divided among and paid over to the several institutions and corporations hereinafter named, the recipients of the residue of my estate as hereinafter divided and bequeathed, and in the proportions in which they are, respectively, hereinafter made the recipients of the said residue, to be held by them, respectively, upon the same trusts and for the same purposes as hereinafter declared."

By the fifteenth clause $5000 is given in trust to William A. Passavant, to hold and invest until a hospital shall be duly organized and established in Chicago in accordance with the plans suggested by the trustee, and, when said institution is duly organized and incorporated, to pay over said trust fund to said institution, to be by it invested and the net annual income expended for the objects and purposes for which the institution was organized. The sixteenth clause directs that all the rest and residue of the testator's estate be converted into money and cash securities and divided into eleven equal parts, to be disposed of as thereinafter specified. The seventeenth clause gives and bequeaths one-eleventh of all the rest and residue of the testator's property to appellant, to have and hold the same to said institution and its assigns forever, in trust, however, to invest, hold, manage and control the same, and from time to time to re-invest and the annual income thereof to use and expend in defraying the current expenses of said institution. Clauses from 18 to 25, inclusive, dispose of the remaining ten-elevenths of the residuary estate among the several corporations or associations named as defendants to the original bill. All of said bequests are given to the respective societies, institutions and corporations in trust, with power to hold the same and re-invest and to use

the income in furtherance of the charitable purposes for which said institutions were severally and respectively organized.

The foregoing general statement applies to all of the residuary bequests except the twenty-first and twenty-second. By the twenty-first the city of Chicago is given one-eleventh part of the residuary estate, to be held in trust and invested and the income paid over to the board of education, to be by said board expended for the use and benefit of the public schools of said city and for the purchase of books and other school supplies for indigent children attending the public schools of said city. By the twenty-second clause the city of Chicago is given two additional eleventh parts of the residuary estate, to hold in trust and invest and to use the annual income in providing fuel for the needy and suffering people of said city. The twenty-sixth clause contains some directions in relation to the improvements in the cemetery lot of the testator, erection of a suitable monument, and a division among the several institutions and corporations of the residue of the estate. Clause 27 authorizes the executors to sell and convey all of the testator's estate, both real and personal, not specifically devised and bequeathed, and gives directions in respect to the terms of sale and manner of conveying, etc. The twenty-eighth clause directs that the estate be settled up, if practicable, within five years after the death of the testator. The twenty-ninth clause is advisory to the several societies and corporations to whom legacies are given, in regard to the character of investments that are recommended. The thirtieth clause waives the executors' bonds, and the thirty-first nominates four persons as executors.

The will was executed on the 31st day of December, 1867, and duly probated February 25, 1869. On the 5th day of August, 1868, the testator made and executed a codicil to said will, containing eight clauses. The first, second and third clauses of the codicil give money bequests to relatives.

The fourth makes a change in one of the trustees named in clause 11 of the will. The fifth clause provides that in case the hospital mentioned in clause 15 of the original will "shall not, within three years after my decease, be duly organized and established as an incorporated institution and placed upon an effective basis for success and permanence," the $5000 mentioned in that bequest is to pass to the residuary fund and be distributed in the same manner as the other residuary estate. The sixth clause of the codicil provides that in case the Burr Industrial and Mission School and Free Chapel, mentioned in the thirteenth clause of the original will, shall at any time fail and cease to be carried on and managed as an effective institution to carry out the objects for which the same was organized, the whole of the income from that devise is to pass to the Home for the Friendless, to be used to further the objects and purposes of that institution. The seventh and eighth clauses of the codicil are as follows:

"*Seventh*—In case any of the asylums or institutions which are named in my said last will and testament as recipients of any part of my property and estate shall not, within three years after my decease, be duly organized and established as incorporated institutions and placed upon an effective basis for success and permanence, I hereby order and direct that the several bequests in and by said last will and testament made and given to such institutions, or for their use and benefit, be divided equally between and given to the other institutions and incorporations which in and by my said last will and testament are made recipients of the rest and residue of my property and estate mentioned in item 16 of my said last will and testament, to have and to hold the same to them, respectively, upon the same trusts as they shall, respectively, take and hold the fund which they may receive under and by virtue of the bequests made to them for their use, respectively, in and by my said last will and testament.

"*Eighth*—In case any of the institutions or corporations which, under and by virtue of my said last will and testament, shall receive any portion of my estate, shall at any time fail or cease to carry out effectively the objects for which they are or may be, respectively, established and to promote which the bequests to them are by me made and given, then it is my will, and I do hereby declare and direct, that such institutions and corporations, from and after the time of such failure, shall hold the said trust funds by them, respectively, received, and all accumulations of income thereof, in further trust to pay, divide and convey the same, in equal portions, to and between the other institutions and corporations in my said last will and testament mentioned who are therein made the recipients of the rest and residue of my property and estate mentioned in item 16 therein, to have and to hold the same to them, respectively, upon the same trusts as they shall, respectively, hold the funds which they may receive under and by virtue of the bequests made to or for their use, respectively, in and by said last will and testament."

On April 16, 1869, the legislature passed an act entitled "An act to establish the Northern Illinois Hospital and Asylum for the Insane," and appropriated $125,000 for the purchase of grounds and the erection of suitable buildings. The act provided for the appointment of nine commissioners to select the location for said hospital. In May or June of 1869 the proposed institution was located at Elgin and the work of erecting buildings was soon thereafter commenced. The act provided that with the location of the institution the functions and powers of the commissioners should end and that thereafter the entire control of the institution be given into the hands of three trustees to be appointed by the Governor. The trustees were given power to contract and receive donations and gifts of property and money to aid in the construction of buildings, the title of all property to vest in the State. In January, 1872, the

hospital was occupied, and the first patients were received in April of that year. The asylum was finally completed at a cost of $559,000 and had a capacity to take care of four hundred and fifty patients. The original act of 1869 did not expressly make the trustees of the hospital a body corporate and politic. By a later act, which went into effect July 1, 1875, the name of the institution was changed to the Illinois Northern Hospital for the Insane at Elgin, and the trustees were expressly declared to be a body corporate and politic, with certain powers, among which were the power to manage and direct the affairs of the institution, to contract and be contracted with, to sue and be sued, and to have and use a common seal.

On June 6, 1873, the board of commissioners of Cook county filed a bill in the circuit court of said county to compel the testamentary trustee, under clause 14 of the Burr will, to convey the premises in question to Cook county, based on the claim that the Cook County Insane Asylum complied with the conditions upon which the devise in clause 14 was made and was therefore entitled to the property. The Northern Illinois Hospital and Asylum for the Insane was made a party defendant to that bill and set up its claim to the property. That litigation was finally terminated by a decision of this court handed down on the 21st day of June, 1878, in which it was held that the Cook county institution was not entitled to the property, and that the passage of the act of April 16, 1869, for the establishment of the Northern Illinois Insane Asylum constituted an effort reasonably promising success, made by competent authority, to establish an asylum, within the meaning of clause 14 of the Burr will, and entitled the institution located in pursuance of said act to the preliminary aid from the income in the erection of its buildings and to the *corpus* of the property on going into operation, "as it did, within the time limited." (*Holden* v. *Cook County*, 87 Ill. 275.) After the rendition of final judgment in that case in this

court, and on July 20, 1878, Thomas B. Bryan, as trustee, made a deed conveying the premises in question to the trustees of the Illinois Northern Hospital for the Insane at Elgin. The deed recites the clause of the will devising the property to the grantor and the judgment of this court in *Holden* v. *Cook County*, and refers to the opinion of this court as having "determined that the party of the second part to this deed is entitled to the property hereby conveyed." The deed conveys the premises in controversy to the trustees of the Illinois Northern Hospital, subject to a lease which the grantor had previously executed to Horace B. Atwater and by him assigned to Samuel S. and Daniel B. Gardner. Said deed was afterwards, on August 3, 1878, duly recorded in the recorder's office of Cook county. Since the execution and delivery of this deed, Bryan, as trustee, has had no connection with the premises and has made no other or further conveyances of said premises. So far as the record in this case shows, the title of the Illinois Northern Hospital has never been questioned until the filing of the answer and cross-bill of appellant in this case.

In 1909 the legislature passed an act revising the laws relating to the State charitable institutions, which took the control and management of certain enumerated institutions out of the hands of the several boards of trustees and placed all of said institutions under a board to be composed of five persons to be appointed by the Governor, and known as the Board of Administration. Said board was made a body corporate and given full and complete power to manage and control all of the charitable institutions enumerated or that might afterwards be acquired or created, and conferred upon said board all of the property rights held by the several boards of trustees, managers or commissioners of the respective State charitable institutions which were placed under said Board of Administration.

Appellant contends that clause 7 of the codicil modified clause 14 of the original will by cutting down the limita-

tion within which the beneficiary of the devise therein made should be organized and established from six to three years, and that the Illinois Northern Hospital was not organized, established and incorporated within three years next after the testator's death, as required by clause 7 of the codicil; that said hospital was not open and ready for the reception of patients until more than three years after the death of the testator and was not an incorporated institution until the passage of the act of 1875. As we understand appellant's contention, it is, that in order to entitle the Illinois Northern Hospital to the devise under clause 14 of the original will and clause 7 of the codicil, it was necessary that the asylum should be established on an effective basis for success and permanence, and duly incorporated, within three years after the testator's death. If appellant's premises are sound we can see no escape from the conclusion that the Illinois Northern Hospital had not complied with the conditions of the will in such way as to entitle it to a conveyance of the property at the time the deed was executed. But we cannot agree with appellant in the construction to be given to clause 14 of the will and clauses 7 and 8 of the codicil. It must be conceded, we think, on all hands, that the devise in clause 14 is a special devise of a definitely described parcel of real estate to a particular person as trustee, in trust for a particular purpose. This clause of the will is complete within itself. It has no connection with any other ·clause of the will and the trustee therein named is charged with no duty except in regard to this particular property. This devise was made in trust for the benefit of an institution to be thereafter organized and located somewhere in the northern part of the State of Illinois as an asylum and hospital for the treatment and care of those who might be so unfortunate as to require the same. At the death of the testator no institution answering the description in this devise was in existence, but the testator saw the necessity for such an institution, and, actuated by

a humane desire to benefit the unfortunate, sought to aid, encourage and facilitate the organization and establishment of an institution to care for those who might be in need of such treatment. Appreciating that it would in all probability require considerable time to establish and put in successful operation an institution of that character, the testator, in said clause 14, fixed a time limit of six years after his decease for the complete establishment of such asylum. The testator manifestly contemplated the organization of an institution for the benefit of the people in a larger scope of territory than a county, since it was provided that the institution should be "located and established in the northern part of the State of Illinois." If he had had in mind the establishment of a local institution it is fair to assume that he would have designated the city or county within which it was to be located. The institution was to be organized by virtue of some State or municipal authority or under some charter which would give the institution a character of permanence and stability. If such institution was not established and put in full and successful operation within six years after the death of the testator, then there was a direction that the executors should sell and convey the premises and pay over the proceeds to the several institutions and corporations which are named as the beneficiaries of the residue of the estate. All of the other charitable bequests made by the testator were made to or for the benefit of societies, organizations or corporations that had either an actual or potential existence, and in every instance the bequest was made direct to the beneficiary, except those made to the city of Chicago, which were in trust, as heretofore stated. It will be observed, also, that no institution or asylum is named in clause 14. The devise is to Thomas B. Bryan in trust, for the benefit of an insane asylum to be organized, located and established in the northern part of the State.

If clauses 7 and 8 of the codicil be read with the several provisions of clause 14 in mind, together with the other charitable bequests made in subsequent clauses of the will, it will clearly appear that said clauses of the codicil have no reference whatever to the provisions of clause 14 of the original will. Clause 7 of the codicil provides, that "in case any of the asylums or institutions which are named in my said last will and testament as recipients of any part of my property and estate shall not, within three years after my decease, be duly organized and established as incorporated institutions and placed upon an effective basis for success and permanence," etc. What "asylums or institutions" are embraced within the seventh clause? The seventh clause answers this question. They are those "asylums or institutions which are named in my said last will and testament as recipients," etc. What institutions are named in the last will and testament? We have already referred to the several bequests made to the Washingtonian Home, the American Bible Society, the Chicago Protestant Orphan Asylum, the Chicago Erring Women's Refuge for Reform, the Home for the Friendless, and others. These institutions are named and each of them is a recipient of a part of the testator's property. The will giving to these several institutions one or more elevenths of the residuary estate had no limitation whatever within which said institutions were to become "duly organized and established as incorporated institutions and placed upon an effective basis for success and permanence." It may well be supposed that the testator, in reflecting over the provisions for these various institutions, concluded, for greater certainty and to prevent possible disputes and doubts as to the time within which these several bequests should be paid, if at all, to add clause 7 of the codicil, fixing a general limitation of three years in which these several institutions mentioned in the residuary clause should be so organized and incorporated as to insure permanency and success.

The general rule that special and specific provisions of
a will will prevail over general provisions where there is
inconsistency or doubt is applicable here.   In *Dickison* v.
*Dickison,* 138 Ill. 541, this court, on page 547, said: "It is
also a familiar rule in the construction of wills that general
provisions in a will must give way to specific provisions;
that where there is a general devise of property in one part
of the will and a specific disposition of the same property
in another part, these are to be regarded, generally, as ex-
cepted out of the general devise.   (Redfield on Wills, 446,
and cases cited.)   Moreover, a general residuary clause
being ordinarily introduced by the testator to prevent in-
testacy as to any part of his estate, will generally be con-
strued as intended for nothing more than a disposition of
those portions of the estate not previously disposed of, and
in such case the presumption of a change of purpose in
the testator's mind while preparing his will cannot arise.
(Ibid.)   The specific directions in the will, where the mind
of the testator has been directly and intelligently directed
to them, are much safer guides to his intention than gen-
eral provisions, which do, by virtue of their generality, con-
travene the specific provision but which might or might not
have been so intended.   And especially is this so where, as
in this case, the general provision is a residuary clause,
which, as we have said, might, as it generally is, have been
inserted with the sole view of the disposition of any re-
siduum of the estate not before devised."   See, also, *Hub-
bard* v. *Hubbard,* 198 Ill. 621; *Dee* v. *Dee,* 212 id. 338.

Again, the will and codicil bear unmistakable evidences
of great care and accuracy in the use of language in their
preparation.   It is apparent from a careful consideration of
the entire context of the two instruments that they were
prepared by someone familiar with the accurate use of legal
terms.   A critical examination of the will discloses that the
word "devise" is used when referring to real estate, and
the words "give and bequeath" when referring to personal

property, only.  Thus, in clauses 13 and 14, both of which dispose of real estate, the language is, "I give, devise and bequeath," while in clauses from 17 to 25, inclusive, which deal only with personal property, the words employed are, "I give and bequeath."  In the seventh and eighth clauses of the codicil the testator refers to the "several bequests in and by said last will and testament made and given to such institutions," etc.  In all references to the will found in the codicil the word "bequests" is used.  There is no reference in these clauses of the codicil to the devises of real estate made by the thirteenth and fourteenth clauses of the original will.  Again, the several institutions or organizations which are made the recipients of bequests in clauses from 16 to 25, inclusive, are not organized under State or municipal authority, and are, we may assume, supported by voluntary contributions of persons charitably disposed.  Such institutions may be permanent and successful, or otherwise, depending upon the support they may receive.  The testator thought it prudent to require, as an element of additional permanency and effectiveness, that all of these institutions should be duly organized and established as incorporated institutions and placed upon an effective basis for success and permanence within three years after his death.  In regard to the asylum for the insane that was to receive the devise of the real estate under clause 14 of the original will, the requirement that such asylum should be established "under and by virtue of some State or municipal authority or some charter which shall give to the institution a character of permanence and stability," would insure the permanence and success of the institution without regard to whether it was incorporated or not.  Hence there is nowhere in clause 14 any requirement that the asylum for the insane to be established in the northern part of the State should be an incorporated institution.  The requirement there is, that "in case such an asylum shall not be established and put in full

259 — 14

and successful operation within six years after my decease," then the devise to be otherwise disposed of.

In our opinion neither clause 7 nor 8 of the codicil has any reference whatever to clause 14 of the original will. The original limitation of six years in clause 14 controls the devise made in that clause. This being true, appellant cannot make any successful claim that the Illinois Northern Hospital was not established and in successful operation long before the expiration of the time limited in said clause.

Appellant contends that the court should have ordered the costs, including solicitors' fees, paid out of the property in controversy. This court recognizes the general rule that where a testator has expressed himself so ambiguously as to make it necessary or advisable to come into a court of chancery to obtain a construction of his will or to remove a difficulty out of the way of the proper and safe administration of the estate, it is proper to order the costs and solicitors' fees paid out of the estate. (*Woman's Union Missionary Society* v. *Mead,* 131 Ill. 338; *Lombard* v. *Witbeck,* 173 id. 396.) But the allowance of costs in chancery proceedings, except upon the dismissal of a bill, is within the sound legal discretion of the trial court. In the case before us the appellee board was permitted to dismiss its original bill at its own costs. That bill was not filed to obtain a construction of the will, and solicitors' fees could not, in any event, be allowed as costs upon its dismissal. The State of Illinois, through its legally constituted authorities, had been in the actual and undisputed possession of the premises in controversy under a deed from the testamentary trustee for many years before this suit was commenced. This court, as far back as 1878, decided that the Illinois Northern Hospital was entitled to the property, and under that decision the deed was made and the trustee discharged. In view of these circumstances there was no error in dismissing the cross-bill at the cost of cross-complainant.

The appellee board invokes the doctrine of *laches,* the Statute of Limitations and *res judicata* as defenses to the cross-bill. These questions have all been elaborately argued in the briefs of counsel, but in view of the construction which we have placed upon the will and codicil it is not necessary to extend this opinion to discuss the other questions. We think the decree of the court below dismissing the cross-bill may securely rest upon the grounds above discussed, and without expressing any opinion in regard to the other questions we are of the opinion that the decree below is correct, and the same will accordingly be affirmed.

*Decree affirmed.*