(No. 19145.— )
ALMEDA McCREERY *et al.* Appellants, *vs.* JAMES W. BUR-
MOOD, Appellee.

*Opinion filed December 20, 1928.*

L. A. JARMAN, for appellants.

D. L. MOURNING, and SCOFIELD & BELL, for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

Appellants filed their bill in chancery for the partition of certain real estate described. They are the daughters of Philip S. Burmood, who died testate September 25, 1901, leaving a widow and appellants and appellee, James W. Burmood, as his only heirs. Philip S. Burmood executed his will in 1899, and the partition suit brought by appellants asks for a construction of the will.

The widow died April 23, 1927. The decision of the case involves particularly the construction of the second clause of the testator's will. The testator owned at the time of his death 87 acres of land known as the home place, a 52-acre tract, a 17-acre tract, a 41-acre tract, a 28-acre tract and a 23-acre tract, all of which tracts are properly described in the bill. He left surviving him his three daughters, appellants, and his son, appellee, besides his widow. The first clause of the will provides that the funeral expenses and debts of the testator be fully paid. The second clause is as follows:

"*Second*—I give, devise and bequeath to my beloved wife, Sarah Lucinda Burmood, all of my property both real and personal of whatever kind, description or wherever situate to have and to hold during her natural life and from and after the decease of my said wife to go to my children, viz.: Almeda McCreery, Bessie Robinson, Virginia Alexander and James Wallace Burmood, to have and to hold share and share alike to them and to their heirs and assigns forever. Nevertheless it is my will that James Wallace Burmood shall have to be applied toward his portion of said real estate the eighty-seven (87) acres of land being lot number two (2) of the northwest quarter of section number three (3) also lot number one (1) of the east half of the northeast quarter of section number four (4) in township two (2) north of range four (4) west of the fourth principal meridian in the county of Schuyler and State of Illinois (known as the home farm)."

The third clause provides that at the death of the widow the executor named, who was appellee, pay out of the estate $1000 to appellee.

All the facts were stipulated and there is no dispute about questions of fact. The only question raised in the case is the proper construction of the will of Philip S. Burmood. The court decreed that the 87-acre tract constituting the home farm was more than the value of one-fourth of

all the real estate and personal property of which Burmood died seized.

At the time the will was made two of the testator's daughters were married and were living with their husbands in homes of their own. The daughter Virginia Alexander had been married but her husband died, and she and her only child returned to the home of her father. She has since married one Smith. Appellee was married in 1888, and when the will was made was living in a home of his own on his father's land as a tenant and continued to so live up to the death of his father. The personal estate of the testator consisted of approximately $2400. The decree finds that by consent of all the legatees a part of the personal estate was invested in two town lots, and finds that the value of the 87 acres of land was about one-third of the total value of the real and personal estate of the testator. The controversy involves the question whether appellee was entitled, under the will, to the 87 acres of land even though that tract exceeded in value one-fourth of the estate.

The second clause of the will provides that after the death of the testator's wife the real and personal estate should go to his four children, "share and share alike to them and to their heirs and assigns forever. Nevertheless it is my will that James Wallace Burmood shall have to be applied toward his portion of said real estate the eighty-seven (87) acres of land [describing that tract] (known as the home farm)." Appellants contend that the testator intended that if the home farm devised to appellee exceeded one-fourth the value of the entire estate for distribution appellee should make good to the other devisees the amount that the 87-acre tract of land exceeded in value one-fourth the value of the entire estate, while appellee contends that the testator intended him to have the 87 acres of land even though that tract exceeded in value one-fourth of the estate, and that there is no intimation that he should reimburse the other devisees for the excess in value. That

contention is supported by the third clause of the will, which required the payment to appellee, at the time of the death of the testator's wife, of the sum of $1000. The provision of the second clause of the will that at the death of the testator's wife his estate, real and personal, should go to his four children named, "to have and to hold share and share alike to them and to their heirs and assigns forever," was qualified immediately following the language used, by the language, "nevertheless it is my will that James Wallace Burmood shall have to be applied toward his portion of said real estate" the 87 acres of land constituting the home place. The general intent expressed in the will is that the testator's property should be equally divided among his four children, but that general intent is negatived by the provision that appellee should have, to be applied toward his portion of the land, the 87-acre home farm. We cannot know, and it does not appear from the will, what the testator regarded as one-fourth of his real estate, but in the second clause of the will he expressed the intention that "nevertheless" or "notwithstanding" or "in any event" appellee was to have the home place. The devise of the home farm to appellee was repugnant to the devise of a fourth of the real estate to each of testator's children. It was a later clause in the will and abrogated or modified the former devise of one-fourth of the land to each of the children. (*Glass* v. *Johnson,* 297 Ill. 149; *Meins* v. *Meins,* 288 id. 463; *Becker* v. *Becker,* 206 id. 53.) It is a familiar rule in the construction of wills that general provisions must give way to specific provisions. (*Dickison* v. *Dickison,* 138 Ill. 541; *Saeger* v. *Bode,* 181 id. 514.) After the devise of one-fourth of the real and personal estate to each of testator's children the will expressed the intention of the testator that "nevertheless" or "notwithstanding" the previous provisions appellee should have the 87 acres of land constituting the home farm. In construing wills it is a cardinal rule that the intention of the testator shall be given effect if possible and not contrary

to law or some question of public policy. Neither the law nor public policy is violated by the devise of the home farm to appellee. A will is to be construed from the language of the instrument and every part of it given effect if possible to be done. Authorities sustaining this rule are 1 Redfield on Wills, pp. 445-451, 452; 2 Jarman on Wills, *475, *476; *Brownfield* v. *Wilson,* 78 Ill. 467; *Hamlin* v. *United States Express Co.* 107 id. 443; *Bradley* v. *Jenkins,* 276 id. 161.

As we have said, the devise of one-fourth of the personal and real estate to each of the four children was immediately qualified or modified by the devise of the home farm to appellee, and that tract of land constituted more than one-fourth of the entire estate, real and personal. It is an impossibility to give appellee the home farm of 87 acres and also give each of the other three children one-fourth of the total value of the real and personal estate. It was the intention of the testator as expressed in his will that appellee should receive the home farm whether it was worth more or less than the value of the entire real and personal estate. The general intention to give each of the children one-fourth of the estate is modified by the particular intention expressed by the testator to give appellee the home farm, and the particular intention being the last expression in the will of the testator must be given effect over the general intention.

Appellants do not seriously contend that appellee should not have the 87-acre home farm, but contend that he should be required in equity to contribute or pay to the other children the excess in value of the 87 acres above the one-fourth of the entire estate. While the will says the 87-acre tract is to go to appellee, "to be applied toward his portion of said real estate," we construe the intention of the testator, as disclosed by the language used, to be that appellee should have the 87 acres in any event, and if that tract was less than one-fourth in value of the entire estate the rights of the parties

could be adjusted by a court of equity. There is no language intimating that if the 87 acres exceeded one-fourth of the value of the entire estate appellee should pay the excess to the other children. We think such intention is clearly negatived by the third clause of the will, which gives appellee $1000, to be paid to him upon the death of the widow. That clause is contrary to the devise in the second clause of one-fourth of the entire estate to each of the four children, as the testator clearly expressed his intention that appellee should have $1000 more of his estate than either of the other children. *Brownfield* v. *Wilson, supra.*

The widow died April 23, 1927, and the court decreed that appellee was seized in fee simple of the 87 acres of land under the will and that he was not required to pay owelty or any sum of money to the other children for the equalization of shares in the real estate of the testator, and that appellants were seized in fee simple as tenants in common of the rest of the real estate owned by the testator except 20 acres which had been sold since his death.

The circuit court properly construed the will, and the decree is affirmed. *Decree affirmed.*