The **MIAMI BEACH FIRST NATIONAL BANK**, as Executor under the Will of Lenore P. Hartz, Deceased, Plaintiff-Appellee,

v.

**UNITED STATES of America**, Defendant-Appellant.

No. 29524.

United States Court of Appeals, Fifth Circuit.

April 30, 1971.

Rehearing Denied June 7, 1971.

Michael Osman, Lavinia L. Redd, Asst. U. S. Attys., Miami, Fla., Johnnie M. Walters, Asst. Atty. Gen., Lee A. Jackson, Michael L. Paup, Attys., Tax Div., U. S. Dept. of Justice, Washington, D. C., Paul M. Ginsburg, Atty., Dept. of Justice, Washington, D. C., for defendant-appellant; Robert W. Rust, U. S. Atty., of counsel.

William Archie Brown, Copeland, Therrel, Baisden & Peterson, Miami Beach, Fla., for plaintiff-appellee.

Before TUTTLE, AINSWORTH and SIMPSON, Circuit Judges.

TUTTLE, Circuit Judge:

This case is a companion case to the Florida Bank at Lakeland v. United States, 443 F.2d 467, decided April 26, 1971, in that both cases deal with the application of § 2055 of the Internal Revenue Code of 1954 to a charitable bequest to a recognized charity, here a gift to Indiana University, after the death of two life beneficiaries. The question is similar in that it is whether broad powers vested in the trustees as to investments, allocations between income and principal, and other discretionary acts so permit diversion of the remainder to the life beneficiaries as to prevent the interest which may ultimately pass to the charitable remaindermen being "presently ascertainable, and hence severable

from the noncharitable interest". Treasury Regs. on Estate Tax, 1954 Code 26 CFR § 20.2055–2.

The answer to the question must depend upon our determining whether the standards of ascertainability and certainty established in the five Supreme Court cases, and articulated in Internal Revenue Regulations permits an affirmance of the judgment of the trial court which concluded that none of the provisions of the inter vivos trust prevented the deduction of a charitable bequest to the remainderman.

We need not again discuss the several holdings of the cases referred to, although we cite them here for ready convenience. They are Humes v. United States, 276 U.S. 487, 48 S.Ct. 347, 72 L. Ed. 667 (1928); Ithaca Trust Company v. United States, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647 (1929); Merchants Nat. Bank of Boston v. Commissioner of Internal Revenue, 320 U.S. 256, 64 S.Ct. 108, 88 L.Ed. 35 (1943); Henslee v. Union Planters Nat. Bank and Trust Company, 335 U.S. 595, 69 S.Ct. 290, 93 L. Ed. 259 (1949) and Commissioner of Internal Revenue v. Sternberger's Estate, 348 U.S. 187, 75 S.Ct. 229, 99 L.Ed. 246 (1955).

The provisions of the inter vivos trust that are here relevant are as follows: Section VI provided as follows:

The Trustees shall have the following general powers, duties and discretion in addition to those now or hereafter conferred by law:

A. To retain as an investment any property at any time forming a part of the Trust Estate without regard to the proportion which such property, or property of a similar character, so held, may bear to the entire amount of the Trust Estate.

B. To invest and reinvest any property, including but not by way of limitation, bonds, notes, debentures, mortgages, certificates of deposit, common and preferred stocks, and *shares or interests in investment trusts,* without regard to the proportion any such investment or investments of a similar character may bear to the entire amount of the trust fund or estate.

\* \* \* \* \* \*

M. To do all such acts, take all such proceedings and exercise all such rights and privileges, although not hereinabove specifically mentioned, with relation to such property as if the Trustees were the absolute owner thereof \* \* \*. (Emphasis added)

## VII. INCOME AND PRINCIPAL

The Trustees may determine in their sole discretion what is income and principal and they may apportion and allocate to income or principal, as they may deem proper, all receipts, credits, disbursements, charges, and expenses, including Trustees' commissions whether computed on income or principal, or both. Except insofar as the Trustees shall exercise this discretion, the following rules shall apply:

A. All dividends on shares of a corporation which form a part of the principal of the trust and are payable in the shares of the corporation shall be deemed principal. All dividends payable otherwise than in the shares of the corporation itself, including ordinary and extraordinary dividends payable in shares or other securities or obligations of corporations other than the declaring corporation, shall be deemed income. Where the Trustees shall have the option of receiving a dividend either in case or in the shares of the declaring corporation, it shall be considered a cash dividend and deemed income, irrespective of the choice made by the Trustees.

\* \* \* \* \* \*

D. Where any part of the principal consists of bonds or other obligations for the payment of money,

they shall be deemed principal at their inventory value or in default thereof at their market value at the time they become a part of the Trust Estate, regardless of their par or maturity value, and upon their respective maturity or upon their sale, any loss or gain realized thereon shall fall upon or inure to the principal.

After the death of the Settlor the Trustee shall make an annual accounting to the adult primary beneficiary or beneficiaries of the Trust Estate. The approval of any account by such primary beneficiary or beneficiaries shall be final and binding upon all persons as to the matters and transaction shown in that account.

It is the government's contention that the principles to be distilled from the Supreme Court decisions and as articulated under the long-standing Treasury Regulation 20.2055–2 [1] require a holding that the corpus of this trust is so subject to invasions by the broad discretion granted to the trustees as to make the interest which will pass to charity neither "presently ascertainable and hence severable from the non-charitable inter-

est" nor measurable by an objective standard "fixed in fact and capable of being stated in definite terms of money".

The appellees, to the contrary, base their argument primarily upon the proposition that under a Florida concept of fiduciary obligations "the trustees' duty to deal impartially as between successor beneficiaries is an ascertainable, external and judicially established standard which will protect and preserve the gift of corpus to Indiana University." Taxpayers point out that in the named Supreme Court cases, the court had to construe "dispositive" provisions which "either direct or permit a trustee to distribute the corpus to private beneficiaries under certain circumstances." They distinguish the present case by saying that here the court is asked to determine "whether a power of invasion was granted" rather than "whether a power to invade which was clearly given would be exercised." They contend that the trustees here have no power of invasion.

■ Laying aside for the moment the question as to whether, under Florida law, a court of equity would interfere with a discretionary exercise of the pow-

---

1. (a) *Remainders and similar interest. If a trust is created or property is transferred for both a charitable and a private purpose, deduction may be taken of the value of the charitable beneficial interest only insofar as that interest is presently ascertainable, and hence severable from the non-charitable interest.* The present value of a remainder or other deferred payment to be made for a charitable purpose is to be determined in accordance with the rules stated in Sec. 20.2031–7. Thus, if money or property is placed in trust to pay the income to an individual during his life, or for a term of years, and then to pay the principal to a charitable organization, the present value of the remainder is deductible. To determine the present value of such remainder use the appropriate factor from column 4 of Table I or Table II of Sec. 20.2031–7, whichever is applicable. * * *

   (b) *Transfers subject to a condition or a power.* If, as of the date of decedent's death, a transfer for charitable purposes is dependent upon the performance of

some act or the happening of a precedent event in order that it might become effective, *no deduction is allowable unless the possibility that the charitable transfer will not become effective is so remote as to be negligible.* If an estate or interest has passed to or is vested in charity at the time of a decedent's death and the estate or interest would be defeated by the performance of some act or the happening of some event, the occurrence of which appeared to have been highly improbable at the time of the decedent's death, the deduction is allowable. *If the legatee, devisee, donee, or trustee is empowered to divert the property or fund, in whole or in part, to a use or purpose which would have rendered it, to the extent that it is subject to such power, not deductible had it been directly so bequeathed, devised, or given by the decedent, the deduction will be limited to that portion, if any, of the property or fund which is exempt from an exercise of the power.* * * * (Emphasis added.)

ers plainly and literally granted in this will to favor either the life tenant or the remainderman, it must be apparent that the powers literally granted to the trustees, if exercised in each instance for the benefit of the life beneficiaries, might materially reduce the expectation of Indiana University to receive a measurable part of the corpus of this estate.

In the first place the trust instrument expressly authorizes the trustees to retain any investments held at the time the property was conveyed to them. It expressly authorized an investment or reinvestment in all kinds of securities including "shares or interests in investment trusts."

It is plain that to the extent that current dividends received by the trustees from investment trust shares or mutual fund shares would include any gains received by the investment trust upon its disposition of its underlying investments or would include realized gains from liquidations of any of its holdings in corporations that might be subject to liquidation, this would be an invasion of corpus if all dividends were considered as income by the trustees.

Revenue ruling 60–385 clearly points out the potential for an invasion of capital for the benefit of a life tenant.

"Where a trust instrument provides that the trust income shall be paid to a life tenant, that the corpus may be invested in stock of regulated investment companies, and that dividends received by the trustees which represent capital gains realized from the sale of securities owned by such companies shall be treated as corpus and held for the benefit of a charitable remainderman, then the charitable remainder interest is severable from the noncharitable interest, and its present worth may be ascertained. The present worth of such a charitable remainder is deductible for income, estate, and gift tax purposes in the manner and to the extent provided in sections 170, 2055 and 2522 of the Internal Revenue Code of 1954.

However, if the trust instrument provides that dividends representing capital gains realized as aforesaid shall (or, in the trustee's discretion, may) be treated as income and paid to the life tenant, or if the instrument could be so construed under applicable local law, then the charitable interest is not severable from the noncharitable interest since no known formula has been advanced for ascertaining the value of the charitable interest. Therefore, no deduction for income, estate, or gift tax purposes is allowable with respect to the transfer."

■ While such a ruling does not of course, have the force of a regulation or of statute, it is quoted here to make plain what the true distinction is. Moreover, such a regulation is entitled to be given weight as expressing the studied view of the agency whose duty it is to carry out the statute. See Macey's Jewelry Corp. v. United States, 387 F.2d 70 (C.A. 5, 1967).

Moreover, dividends received from mutual funds might well be in the form of "stock dividends" in the fund itself. Such stock dividends normally are accretions to the capital. However, when, as testified to by taxpayer's witness, capital gains distributions from a mutual fund may be offered to share holders in the form of cash or additional shares in the mutual fund, the express provision of the trust takes over. In such a situation:

(a) *supra*, provides "where the trustees shall have the option of receiving a dividend either in cash or in the shares of the declaring corporation, *it shall be considered a cash dividend and deemed income, irrespective of the choice made by the trustees.*" (Emphasis added)

In such a situation the trustees are not even given the option to allocate a dividend representing a capital gain to corpus. They are *directed* to allocate it to income.

The possibility of an invasion of the kind envisioned above is not remote. Both federal statutes and Florida laws

recognize that a mutual funds distribution in the form of dividends may represent both capital gains distributions and ordinary investment income. (See Florida Statute Annotated, § 690.03.)

The government points further to the explicitly broad powers of the trustees to "determine in their sole discretion what is income and principal and they may apportion and allocate to income or principal, as they may deem proper, all receipts, credits, disbursements, charges and expenses, including trustees commissions whether computed on income or principal or both."

We do not assume that a fiduciary under general fiduciary principles would be so brash or so derelict in his duty as to make a bookkeeping entry and simply transfer 100 shares of stock belonging to the corpus of the estate to the life beneficiaries as income. Such a proceeding would fall afoul generally accepted fiduciary principles (see III Scott Trust, § 233.5 [third edition, 1967]; also Lowell, Florida Law of Trust, 1965 § 80 at 206.)

The taxpayers rely heavily on the case of Wallace v. Julier, 147 Fla. 420, 3 So. 2d 711 (1941). As we read both these treatises and the Florida case, it is apparent that the fiduciary in the exercise of his investing judgment, must exercise an honest discretion such, for instance, as determining to what extent he shall invest in securities holding opportunities for enhancement as against investing in securities producing the greatest yield consistent with safety. The language of these writings bear heavily on this sort of discretion to be exercised by the trustee. However, all of the writings indicate clearly that where a specific authority is granted to the trustee to depart from normal accounting principles, the trustee shall be given the authority to do these discretionary acts unless they are inconsistent with the purpose of the testator or the creator of the trust. The *Julier* case is a clear indication of this distinction. In that case the trustees had failed to distribute some ten years of income to the life tenants, apparently merely permitting it to accumulate.

The trial court directed that the income be distributed. However, it is also apparent that the will there before the court for construction authorized an allocation of "any *profits, accretions* or *increases* as income and to determine, in their absolute discretion, what receipts shall be regarded as income and what receipts shall be regarded as principal for all purposes connected with the administration of my estate or of any fund created hereunder." The court having already said that "it is too well settled in this and other jurisdictions that the lode star followed by the courts in construing a will is the intent of the testator as gathered from what was written in the will", then said:

"The entire context of the will evidences the intention of the testatrix to make ample provision for the two life tenants named in the residuary clause of the will and it is apparent that to carry into effect this intent she vested extraordinary powers in her trustees. It, therefore, follows that the will shall not be so construed as to allow the power vested in the trustees to defeat the paramount intent of the testatrix."

The court thereupon directed that the accumulations of the ten year period, clearly including "accretions and increases" be distributed to the income beneficiaries. The court thus gave full scope to the "extraordinary powers" vested in the trustees.

We perceive no power granted here with respect to the investment in mutual funds or the treatment of dividends received therefrom or in carrying out the specific authorization to charge expenses normally chargeable against income against the corpus of the estate (it is to be particularly noted that this power expressly includes "trustees commissions whether computed on income or principal or both") which, if exercised would run afoul the principles of fiduciary management and relationships under the Florida law.

The record does not disclose, and therefore we, of course, are not at liberty to speculate on how much diversion

might normally be made by virtue of the powers of investment and allocation of receipts and expenditures as between the income beneficiaries and the remainderman would occur if the trustees carried out with discretion the extraordinary powers given them in this inter vivos trust. However, recognizing, as we do, that the creator of the trust fully understood that trustees commissions and certain expenses for the obtaining or creation of income might properly be charged against income were it not for the express grant of authority he included in his trust instrument, it is impossible for the court to say that the invasions of corpus resulting from these powers would not be significant. If so, by definition "the possibility that the charitable transfer will not become effective is" *not* "so remote as to be negligible" (see Henslee v. Union Planters Nat. Bank, supra.) The trial court thus erred in holding that the estate was entitled the claim to charitable deduction.

The judgment is reversed and the case remanded for further proceedings not inconsistent with this opinion.