KATE FROMAN TRUST, ADOLPH SIEVERS, AND SECURITY BANK AND TRUST COMPANY OF MT. CARMEL, CO-TRUSTEES, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3704–70.     Filed June 20, 1972.

*Addis E. Hull* and *Ronald I. Reicin*, for the petitioners.
*Lewis M. Porter, Jr.*, for the respondent.

SIMPSON, *Judge:* The respondent determined that the petitioners are liable as transferees for a deficiency in the Federal estate tax of the Estate of Kate Froman in the amount of $56,710.28. The issue for decision is whether the fact that the trustees under a testamentary trust had certain discretionary powers with respect to the investment of property and the allocation of receipts between income and principal caused the value of a charitable remainder to be unascertainable for estate tax purposes.

FINDINGS OF FACT

Some of the facts have been stipulated, and those facts are so found.

The petitioners are Adolph Sievers and Security Bank & Trust Co. of Mt. Carmel, cotrustees of the Kate Froman Trust. At the time of filing the petition in this case, Adolph Sievers maintained his legal residence in Deltona Beach, Fla., and the principal place of business of Security Bank & Trust Co. of Mt. Carmel was Mt. Carmel, Ill. The petitioners are transferees of the assets of the estate of Kate Froman, transferor, within the meaning of section 6901 of the Internal Revenue Code of 1954,[1] and, as such, are liable for the deficiency, if any, in estate tax due from the transferor, plus interest thereon as provided by law.

Kate Froman (the decedent) died testate a resident of Illinois on April 25, 1966. At the time of her death, she had been a widow for 20 years and never had any children, natural or adopted. Her formal education terminated at the end of the eighth grade.

The decedent's will was amended by four codicils. As so amended, the will provided for the payment of certain specific bequests and directed that after the payment of such bequests and the completion of the administration of the estate, the remainder of the decedent's property should be placed in trust. Fifteen percent of the income of the trust was payable to Gilbert Froman for his life; 15 percent to Mary Potter for her life; and 15 percent to Roy Beanblossom for his life. Ten percent of the income was to be divided equally between Linda Froman and Mark Froman until the termination of the trust, and on the termination of the trust, each of them was to receive a bequest of $5,000. Forty-five percent of the income of the trust was payable to organizations which qualify under section 2055. The trust was to terminate on the death of the last to survive of Gilbert Froman, Mary Potter, and Roy Beanblossom, and the remainder of the trust, after payment of outstanding debts and the specific bequests for Linda Froman and Mark Froman, was also payable to organizations qualifying under section 2055. The will also provided that a loan secured by the decedent should be paid out of the income of the trust otherwise payable to charitable organizations so long as the trust continued. At the time of her death, the principal amount of such loan remaining to be paid was $87,350.

The property transferred in trust included: $5,896.17 in cash, three $1,000 par value U.S. Treasury bonds, four $500 par value U.S. savings bonds, and 14,000 shares of Gillette Co. stock.

Paragraph Eighth of the decedent's will provided in part as follows:

(a) I charge the Executor of my Estate and the Trustees of the Kate Froman Trust to follow the strictest principles of integrety [sic] in the administration of

---

[1] All statutory references are to the Internal Revenue Code of 1954.

my Estate and Trust, always being mindful to achieve good investment results by having patience and in keeping with my concept of providing a prudent program for a conservative investor. I achieved this by being steadfast and loyal to the Gillette Company and I suggest that the Executor and Trustees do the same unless Gillette loses favor as an institutional investment medium by being in the portfolios of less than twenty (20) institutions, which are highly regarded in financial circles as careful and well managed in their security holdings.

(b) I hereby give to my said trustees the fullest power and authority in all matters and questions pertaining to the administration of this trust, complete power and authority to sell and convey at public or private sale, at such prices and upon such terms as to them may seem just and proper and to invest and reinvest; to vote any stock or other securities, under its control, in person or by proxy and to do any other acts necessary to carry out and perform the duties of this trust. The Trustees shall determine what is income and what is principal hereunder, and the decision of said Trustees with respect thereto shall be final.

Mr. Townsend was employed by the decedent as her attorney to draft her will. Such will was drafted by him in the regular course of his law practice. In drafting the decedent's will, Mr. Townsend incorporated the provisions relating to administrative powers which he copied from a form book in his library. The inclusion of such provisions in a client's will or trust instrument was a matter of standard procedure in the regular course of his practice. To the best of his knowledge, Mr. Townsend did not read or explain to the decedent the provisions relating to the administrative powers of the trustees. The decedent signed the will as proposed in the presence of Mr. Townsend after having had pertinent provisions of the will read to her as redrafted.

Adolph Sievers was also the executor of the estate of Kate Froman, and on March 30, 1967, he filed a Federal estate tax return for the estate with the district director of internal revenue, Springfield, Ill. The return reported the gross estate tax value of the residue transferred in trust as $484,348.52. The values of the gifts of income for life to the named individuals were computed. The computation accompanying the return treated the gift of income to charity as having no value because such income was to be used to pay off the loan. The value of the remainder was computed, and the value of the contribution to charity was computed by subtracting from the value of the remainder the specific bequests and the amount of the loan that was expected to be unpaid at the termination of the trust. The charitable remainder as so computed was $193,037.42. The estate claimed a deduction under section 2055 for that amount, in addition to a deduction for a cash contribution of $10,000. The parties have stipulated that the method used for computing the value of the charitable remainder was proper, but the respondent disallowed the deduction for the contribution of the remainder interest on the ground that the value of such interest was not ascertainable.

OPINION

The respondent has conceded on brief that an inter vivos transfer of certain real property to collateral relatives was not a gift in contemplation of death within the meaning of section 2035 and that therefore the value of such property is not includable in the decedent's gross estate. Thus, the only issue for decision is whether the administrative powers granted the trustees under the Kate Froman Trust caused the value of the remainder to be unascertainable for estate tax purposes.

Section 2055 allows a deduction from a decedent's gross estate for the value of property transferred for certain charitable uses. Section 20.2055–2 of the Estate Tax Regulations states in part:

(a) * * * If a trust is created or property is transferred for both a charitable and a private purpose, deduction may be taken of the value of the charitable beneficial interest only insofar as that interest is presently ascertainable, and hence severable from the noncharitable interest. The present value of a remainder or other deferred payment to be made for a charitable purpose is to be determined in accordance with the rules stated in § 20.2031–7. * * *

(b) * * * If the legatee, devisee, donee, or trustee is empowered to divert the property or fund, in whole or in part, to a use or purpose which would have rendered it, to the extent that it is subject to such power, not deductible had it been directly so bequeathed, devised, or given by the decedent, the deduction will be limited to that portion, if any, of the property or fund which is exempt from an exercise of the power. * * *

*Commissioner* v. *Sternberger's Estate*, 348 U.S. 187 (1955); *Ithaca Trust Co.* v. *United States*, 279 U.S. 151 (1929); compare *Henslee* v. *Union Planters Bank*, 335 U.S. 595 (1949), with *Miami Beach First National Bank* v. *United States*, 443 F. 2d 475 (C.A. 5, 1971), certiorari denied 404 U.S. 984 (1971). A contribution of a future interest may be deductible even though the amount ultimately received by charity cannot be ascertained with certainty; it is sufficient if the value of the future interest can be predicted with reasonable reliability by use of certain assumptions, for example, the assumed life of an intervening life beneficiary. When there is a gift of income to a life beneficiary and a gift of the remainder to charity, any prediction as to the value of the gift to charity must be based on the assumption that the life beneficiary will receive only income and that the corpus will be preserved for charity. The respondent argues that in this case, that assumption cannot be made because the trustees may use their administrative power to divert corpus to the life beneficiaries.

In paragraph Eighth (b) of the will, the trustees were given broad powers to sell, to manage, and to invest the assets of the trust. However, in paragraph Eighth (a) of the will, the testator directed the trustees to "follow the strictest principles of integrety [sic] in the administra-

tion of my Estate and Trust, always being mindful to achieve good investment results by having patience and in keeping with my concept of providing a prudent program for a conservative investor." She suggested that her Gillete Co. stock be retained, unless it became unpopular as an institutional investment. These provisions of the will must be interpreted in the light of the applicable local law, in this case, Illinois law. *First National Bank in Palm Beach* v. *United States*, 443 F.2d 480 (C.A. 5, 1971), certiorari denied 404 U.S. 983 (1971); *Miami Beach First National Bank* v. *United States, supra; Florida Bank at Lakeland* v. *United States*, 443 F. 2d 467 (C.A. 5, 1971); *Estate of Stewart* v. *Commissioner*, 436 F. 2d 1281 (C.A. 3, 1971), reversing 52 T.C. 830 (1969), certiorari denied sub nom. *Henderson, Executor* v. *Commissioner*, 404 U.S. 828 (1971); *Peoples Trust Co. of Bergen County* v. *United States*, 444 F. 2d 193 (C.A. 3, 1971); *Estate of Toulmin* v. *United States*, 326 F. Supp. 1028 (S.D. Ohio 1971). In construing the will, we must take into consideration all of its provisions. *McCreery* v. *Burmood*, 332 Ill. 645, 164 N.E. 135 (1928); *Board of Administration* v. *Stead*, 259 Ill. 194, 102 N.E. 173 (1913). When there is an ambiguity in the will, whether it be patent or latent, we should consider the circumstances surrounding its execution to ascertain the testator's intention. *Weir* v. *Leafgreen*, 26 Ill. 2d 406, 186 N.E. 2d 293 (1962).

Although the language of paragraph Eighth (a) of the will is precatory, the Illinois courts would clearly give it effect in construing the decedent's will. *Keiser* v. *Jensen*, 373 Ill. 184, 25 N.E. 2d 819 (1940). When the directions contained in that paragraph are read in conjunction with the provision of paragraph Eighth (b), it is clear that the testator did not intend by paragraph Eighth (b) to give the trustees unlimited power to manage and invest the assets of the trust. On the contrary, it is clear that the testator intended for the trustees to hold the Gillette Co. stock, and if it was ever sold, to follow a program of prudent and conservative investing.

By its terms, paragraph Eighth (b) of the will gave the trustees discretionary power to allocate receipts between income and principal. Yet, Professor Scott in his treatise on trusts pointed out that there are restrictions on a trustee's exercise of a discretionary power; he said:

> To the extent to which the trustee has discretion, the court will not control his exercise of it as long as he does not exceed the limits of the discretion conferred upon him. * * * Even where the trustee has discretion, however, the court will not permit him to abuse the discretion. * * *
>
> * * * * * * *
>
> In determining whether the trustee in exercising or refraining from exercising a power is abusing the discretion conferred upon him, much depends of course upon the extent of the discretion intended by the settlor to be conferred upon him. * * * The real question is whether it appears that the trustee is acting

ın that state of mind in which it was contemplated by the settlor that he should act.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

Ordinarily the extent of the discretion conferred upon the trustee depends upon the terms of the trust, as interpreted in the light of all the circumstances, \* \* \* [3 Scott, Trusts, sec. 187, pp. 1501, 1502, 1507–1508 (3d ed. 1967).]

In the absence of an intention on the part of the testator to favor one class of beneficiaries over another, courts in Illinois hold a trustee to a duty of loyalty to all beneficiaries of a trust. Ill. Ann. Stat., ch. 148, sec. 32 (Smith-Hurd 1964); *Humpa* v. *Hedstrom*, 341 Ill. App. 605, 94 N.E. 2d 614 (1st Dist. 1950). This is not a case in which the testator conferred upon the trustee a power which may be exercised for his own benefit. Compare *Rand* v. *United States*, 445 F.2d 1166 (C.A. 2, 1971). The life beneficiaries in this case did not include the spouse, or children, or parents, or other close relatives of the settlor; the beneficiaries were merely collateral relatives. It is clear that the decedent had some concern for their welfare; the trust was apparently established in order to provide part of the income for the collateral relatives during their lifetime. However, it is equally clear that the decedent desired to make a substantial contribution to charity; virtually all of the remainder of the trust was given to charity, and a substantial part of the income of the trust was initially given to charity. Under these circumstances, there is no indication that the testator wished to prefer the life beneficiaries over the gift of the remainder to charity. It seems more likely that she was concerned about both her collateral relatives and charity and that she wished to have the trustees act evenhandedly in carrying out her will. Under Illinois law, a trustee with discretionary power may not act arbitrarily. *Humpa* v. *Hedstrom, supra*. For the trustees willfully to divert corpus to the life beneficiaries would seem clearly to be inconsistent with the testator's intention and contrary to Illinois law.

In *Lehnard* v. *Specht*, 180 Ill. 208, 54 N.E. 315, 317 (1899), a testator provided in her will that her property should be placed in trust and that:

out of the said income, if it be sufficient, said John Specht [her husband] shall have, take, keep, and use enough for his own support and maintenance in a comfortable living, and for such charitable and benevolent purposes and gratuitous donations and other purposes as he may, in his discretion, think proper or desires, and, if necessary for any or all of these purposes, he may draw upon the principal of the property hereby bequeathed. \* \* \*

The trustee conveyed substantial assets to charity. The holders of the remainder interest attacked the conveyance, and the court held that such a transfer of assets was not authorized by the power given to the trustee.

Although there is no Illinois case precisely dealing with the question that we have before us, the Illinois court's decision in *Lehnard* v. *Specht, supra,* seems to indicate clearly that under Illinois law, the trustees of the Kate Froman Trust would be circumscribed in their exercise of the administrative powers given to them. In the *Lehnard* v. *Specht* case, there was more reason to construe the power broadly because of the close relationship between the trustee and testator and because of the breadth of the language. Yet, in view of the position adopted by the Illinois court, there is little doubt that the Illinois courts would not permit the trustees in this case to use their powers willfully to divert corpus to the life beneficiaries. The existence of the power would perhaps free the trustees from the necessity of defending their actions, if challenged by some sophisticated argument as to whether a receipt should be treated as income or corpus, but it seems clear that the trustee would still be required to make a good-faith attempt to treat income as income and to treat corpus as corpus. In view of the terms of the will, the indications as to the testator's intention, and the applicable Illinois law, we are convinced that the administrative powers given to the trustees did not allow them to divert significant amounts of corpus to income, and therefore, we hold that the value of the charitable remainder can be ascertained by use of the usual assumptions. *Estate of George I. Speer,* 57 T.C. 804 (1972).

In view of our conclusion as to the scope of the administrative powers of the trustees, this case is distinguishable from those cases in which the courts have held that discretionary administrative powers in the hands of the trustees made the value of a charitable remainder unascertainable. Compare *Rand* v. *United States, supra; First National Bank in Palm Beach* v. *United States, supra; Miami Beach First National Bank* v. *United States, supra; Florida Bank at Lakeland* v. *United States, supra; Estate of Stewart* v. *Commissioner, supra.* In those cases, either the terms of the will or the surrounding circumstances indicated that the trustee had more freedom to divert corpus for the benefit of life beneficiaries.

On July 28, 1969, the petitioners executed a release of the administrative powers conferred upon them by paragraph Eighth (b) of the decedent's will, and the life beneficiaries of the Kate Froman Trust consented to such release. The release purported to be effective as of the date of the decedent's death. Such release appears to be untimely. See sec. 2055(a). However, we have not passed upon that issue inasmuch as the petitioners have made no reference to it in their briefs and have apparently abandoned it.

On brief, the petitioners for the first time claimed that they were entitled to an overpayment. They argued that in computing the value of the charitable remainder on the return, a mistake had been made,

and they suggested different methods for computing such value. However, the parties had stipulated that the method used was proper, and the respondent argues that the petitioners have waited too long to present such a claim. The petitioners' claim would raise a substantial new issue; it is not merely a matter of computation. Accordingly, we hold that such claim is untimely and cannot be considered in deciding this case. *Estate of Lyla D. Kleemeier*, 58 T.C. 241 (1972). Although it will be necessary to recompute the amount of the charitable contribution as a result of the additional administrative expenses that have been incurred in this litigation, the value of such contribution should be computed by using the same method as was used on the return.

*Decision will be entered under Rule 50.*